[No. 78052-8.   En Banc.]
Argued November 14, 2006.      Decided April 5, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. ERIC ALBERT WATSON, *Petitioner*.

*Rebecca W. Bouchey,* for petitioner.

*Gerald A. Horne, Prosecuting Attorney,* and *Alicia M. Burton, Deputy,* for respondent.

4

¶1 ALEXANDER, C.J. — Eric Albert Watson seeks reversal of his conviction for failure to register as a sex offender. Watson claims that the sex offender registration statute, RCW 9A.44.130, is unconstitutionally vague because it is unclear whether an offender must reregister upon release from incarceration, when incarceration was due to probation violations and the offender returned to the same address at which he or she had previously registered. We reject this argument because the statute, when combined with existing case law available to citizens, is sufficiently clear to provide the notice required under the due process clause of what conduct it requires. Thus, we affirm Watson's conviction.

## I. FACTS AND PROCEDURAL HISTORY

¶2 The parties stipulated to the facts of this case. In 1993, Watson was convicted of child molestation in the first degree, a crime that requires registration as a sex offender. Watson was informed "on several occasions . . . of both his duty to register as a sex offender and the requirements set forth in RCW 9A.44.130."[1] Clerk's Papers at 36. Watson was released from prison into community custody in January 2003. At that time, he registered with the Pierce County Sheriff's Department, giving his address as 7807 304th Street East, Graham, Washington.

¶3 On May 27, 2003, Watson was convicted of three community custody violations and sentenced to serve an additional 60 days in jail. On July 2, 2003, he was released from jail, having completed his sentence for the violations.

---

[1] RCW 9A.44.130 requires persons convicted of sex offenses to register with a county sheriff. It lays out the procedures and deadlines for registering and the consequences of failing to register.

There is no indication in the record that Watson was instructed by law enforcement to register again as a sex offender. Watson returned to his residence at 7807 304th Street East and did not reregister within 24 hours.[2]

¶4 Watson was subsequently charged with failure to register as a sex offender. He moved to dismiss the charges, alleging that the State lacked sufficient evidence to prove each element of his crime. Watson based his motion on the contention that the sex offender registration statute does not require reregistration when a sex offender returns to the same residence after incarceration for probation violations. The trial court denied the motion. Watson then waived his right to a jury trial, and a bench trial was held on the stipulated facts. The trial court found Watson guilty of failure to register and sentenced him to 30 days in jail, with credit for 31 days served.

¶5 Watson appealed his conviction to the Court of Appeals, arguing that the registration statute was unconstitutionally vague as to whether it required reregistration upon release from incarceration for probation violations. The Court of Appeals affirmed Watson's conviction. It rejected Watson's argument that the statute was vague or ambiguous, concluding that "[a] reasonable person would understand that later restraint based on probation violations was a continuing consequence of the original offense," requiring registration under the statute at issue. *State v. Watson*, 130 Wn. App. 376, 380, 122 P.3d 939 (2005). Watson then petitioned this court to accept discretionary review, and we granted the petition. *State v. Watson*, 157 Wn.2d 1016, 142 P.3d 608 (2006).

## II. ANALYSIS

¶6 "The constitutionality of a statute . . . is an issue of law, which we review de novo." *Kitsap County v. Mattress*

---

[2] There is no indication in the record that Watson ever reregistered. Registration is required within 24 hours of release from incarceration "as a result of" the original sex offense. RCW 9A.44.130(4)(a)(i).

*Outlet*, 153 Wn.2d 506, 509, 104 P.3d 1280 (2005) (citing *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 114, 937 P.2d 154, 943 P.2d 1358 (1997)). "If the statute does not involve First Amendment rights, then the vagueness challenge is to be evaluated by examining the statute as applied under the particular facts of the case." *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992) (citing *City of Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990)). Because the sex offender registration statute does not involve First Amendment rights, we evaluate its constitutionality as applied to Watson.

█ ¶7 We have repeatedly laid out the test for whether a statute is unconstitutionally vague:

> " 'Under the due process clause of the Fourteenth Amendment, a statute is void for vagueness if either: (1) the statute "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed"; or (2) the statute "does not provide ascertainable standards of guilt to protect against arbitrary enforcement." ' "

*State v. Williams*, 144 Wn.2d 197, 203, 26 P.3d 890 (2001) (quoting *City of Bellevue v. Lorang*, 140 Wn.2d 19, 30, 992 P.2d 496 (2000) (quoting *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993) (quoting *Douglass*, 115 Wn.2d at 178))). Watson challenges the sex offender registration statute only on the first of these grounds.

█ ¶8 The due process clause of the Fourteenth Amendment to the United States Constitution requires statutes to provide fair notice of the conduct they proscribe. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972); *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954); *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939); *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391-93, 46 S. Ct. 126, 70 L. Ed. 322 (1926); *Halstien*, 122 Wn.2d at 118; *Coria*, 120 Wn.2d at 163; *Douglass*, 115 Wn.2d at 182. To this end, the language of a penal statute "must be sufficiently explicit to inform those who are subject to it what conduct on their

part will render them liable to its penalties." *Connally*, 269 U.S. at 391. The United States Supreme Court has explained, "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Harriss*, 347 U.S. at 617; *see also Douglass*, 115 Wn.2d at 178. A statute fails to provide the required notice if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally*, 269 U.S. at 391 (citing *Collins v. Kentucky*, 234 U.S. 634, 638, 34 S. Ct. 924, 58 L. Ed. 1510 (1914); *Int'l Harvester Co. v. Kentucky*, 234 U.S. 216, 221, 34 S. Ct. 853, 58 L. Ed. 1284 (1914)); *see also Coria*, 120 Wn.2d at 163 (quoting *Douglass*, 115 Wn.2d at 179); *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991) (quoting *Connally*, 269 U.S. at 391).

¶9 We have noted, however, that "[s]ome measure of vagueness is inherent in the use of language." *Haley*, 117 Wn.2d at 740. Because of this, we do not require " 'impossible standards of specificity or absolute agreement.' " *Coria*, 120 Wn.2d at 163 (quoting *Douglass*, 115 Wn.2d at 179); *Haley*, 117 Wn.2d at 740; *see also Am. Dog Owners Ass'n v. City of Yakima*, 113 Wn.2d 213, 215, 777 P.2d 1046 (1989); *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988) (citing *Kolender v. Lawson*, 461 U.S. 352, 361, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)). " '[V]agueness in the constitutional sense is not mere uncertainty.' " *Douglass*, 115 Wn.2d at 179 (quoting *State v. Smith*, 111 Wn.2d 1, 10, 759 P.2d 372 (1988)). Thus, " 'a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his [or her] actions would be classified as prohibited conduct'." *Halstien*, 122 Wn.2d at 118 (alteration in original) (quoting *Eze*, 111 Wn.2d at 27). Instead, a statute meets constitutional requirements "[i]f persons of ordinary intelligence can understand what the ordinance proscribes, notwithstanding some possible areas of disagreement." *Douglass*, 115 Wn.2d at 179 (citing *State v. Motherwell*, 114 Wn.2d 353, 369, 788 P.2d 1066 (1990)).

¶10 RCW 9A.44.130(4)(a)(i) requires, in relevant part:

Sex offenders who committed a sex offense on, before, or after February 28, 1990, and who, on or after July 28, 1991, are in custody, as a result of that offense, of the state department of corrections . . . or a local jail . . . must register at the time of release from custody with an official designated by the agency that has jurisdiction over the offender. . . . The offender must also register within twenty-four hours from the time of release with the county sheriff for the county of the person's residence . . . .

It is clear from the statute that convicted sex offenders must register upon release from custody, if they were in custody "as a result of" the sex offense that triggered the applicability of the statute. Watson does not dispute this. Rather, he argues that the statute is ambiguous about whether reregistration is required when a sex offender was in custody due to violating conditions of his or her community custody for the sex offense.

¶11 Because of the inherent vagueness of language, citizens may need to utilize other statutes and court rulings to clarify the meaning of a statute. *Douglass*, 115 Wn.2d at 180. Such sources are considered " '[p]resumptively available to all citizens'." *Id.* (alteration in original) (quoting *Smith*, 111 Wn.2d at 7). Several sources are available that shed additional light on the sex offender registration statute and its application to offenders in Watson's position, including case law regarding the nature of incarceration for probation violations and the legislature's explanation of the statute's purpose.

¶12 Watson argues that it is unclear whether incarceration due to violating conditions of community custody is a result of his original sex offense. Case law in Washington provides a clear answer to this. Incarceration for probation violations "relates back to the original conviction for which probation was granted." *State v. Eilts*, 94 Wn.2d 489, 494 n.3, 617 P.2d 993 (1980); *see also State v. King*, 130 Wn.2d 517, 522, 925 P.2d 606 (1996); *State v. Whitaker*, 112 Wn.2d 341, 342, 771 P.2d 332 (1989). It is not

the result of merely the probation violation, but rather "should be deemed punishment for the original crime." *State v. Prado*, 86 Wn. App. 573, 578, 937 P.2d 636 (1997); *cf. State v. Dupard*, 93 Wn.2d 268, 276, 609 P.2d 961 (1980) ("Parole revocation . . . is a 'continuing consequence' of the *original* conviction." (citations omitted)); *Standlee v. Smith*, 83 Wn.2d 405, 407, 518 P.2d 721 (1974) ("Parole is revoked . . . as part of the continuing consequences of the crime for which parole was granted."). Thus, the case law presumptively available to Watson explains in no uncertain terms that incarceration for probation violations is a result of the original conviction for which probation was granted. In this case, that means that Watson's 60 days in custody for violation of his community custody conditions were a result of his sex offense, triggering the requirement that he reregister upon release.

¶13 Furthermore, the legislative purpose for registration requirements is served by requiring reregistration in a case such as we have here. When the legislature enacted the sex offender registration statute, RCW 9A.44.130, it made the following findings:

> The legislature finds that sex offenders often pose a high risk of reoffense, and that law enforcement's efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders who live within the law enforcement agency's jurisdiction. Therefore, this state's policy is to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local law enforcement agencies as provided in section 402 of this act.

LAWS OF 1990, ch. 3, § 401. From this declaration, we have concluded that the "purpose behind sex offender registration is to assist law enforcement agencies' protection efforts." *State v. Heiskell*, 129 Wn.2d 113, 117, 916 P.2d 366 (1996); *see also State v. Stratton*, 130 Wn. App. 760, 765, 124 P.3d 660 (2005); *State v. Pray*, 96 Wn. App. 25, 28, 980 P.2d

240 (1999) (citing LAWS OF 1990, ch. 3, § 401). It does so by keeping law enforcement informed of the whereabouts of sex offenders who may reoffend. *See Pray*, 96 Wn. App. at 28-29.

¶14 This purpose is served by requiring sex offenders to register their address when they are first released and requiring reregistration when they move. However, it is also served by requiring reregistration when they are released from jail after violating their probation on the sex offense. Reregistration at such a time informs law enforcement that a potentially dangerous offender is returning to a residence in their area, which enables law enforcement to take any precautions necessary to protect their community. This information does not lose its usefulness to law enforcement simply because, as in this case, the offender can still be found at the same address registered prior to incarceration. It still informs law enforcement of a change in the sex offender's whereabouts—from jail or prison to the previously registered address—and notifies law enforcement of the presence of a potential danger.

¶15 If a sex offender moved to a residence next door to the local jail and then moved back to his or her previous residence, the statute would clearly require reregistration upon each move.[3] Although incarceration and release are certainly not the same as moving voluntarily, the treatment of this situation under the registration statute provides a useful comparison. Local law enforcement does not need to know that a sex offender is reincarcerated in order to protect the community, so the sex offender need not reregister upon entry into the jail or prison; the fact that the offender physically relocated to a jail, rather than a private

---

[3] RCW 9A.44.130(5)(a) requires, in part: "If any person required to register pursuant to this section changes his or her residence address within the same county, the person must send signed written notice of the change of address to the county sheriff within seventy-two hours of moving. If any person required to register pursuant to this section moves to a new county, the person must send signed written notice of the change of address at least fourteen days before moving to the county sheriff in the new county of residence and must register with that county sheriff within twenty-four hours of moving."

residence, essentially relieves him or her of this obligation. However, just as local law enforcement needs to know when a sex offender moves to its community, it needs to know when a sex offender *returns* to the community. Consequently, the offender remains obligated to reregister upon return to the previously registered residence.

¶16 The standard for finding a statute unconstitutionally vague is high. A statute is presumed to be constitutional. *Coria*, 120 Wn.2d at 163; *Eze*, 111 Wn.2d at 26; *State v. Maciolek*, 101 Wn.2d 259, 263, 676 P.2d 996 (1984). One who challenges a statute's constitutionality for vagueness bears the burden of proving beyond a reasonable doubt that it is unconstitutionally vague. *Douglass*, 115 Wn.2d at 178; *Eze*, 111 Wn.2d at 26; *Maciolek*, 101 Wn.2d at 263; *Haley*, 117 Wn.2d at 739-40. "[T]he presumption in favor of a law's constitutionality should be overcome only in exceptional cases." *Eze*, 111 Wn.2d at 28.

¶17 In light of case law which holds that incarceration for probation violations is a consequence of the original crime, this does not appear to be an exceptional case. Ordinary people need not guess blindly at the meaning of RCW 9A.44.130(4)(a)(i); rather, they can obtain clarification from other sources. Although the legislature could have worded the sex offender registration statute more clearly, we do not invalidate statutes for vagueness simply because they "could have been drafted with greater precision." *Douglass*, 115 Wn.2d at 179 (citing *Rose v. Locke*, 423 U.S. 48, 49, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975); *Eze*, 111 Wn.2d at 27). Instead, this case is similar to others in which we have upheld statutes against vagueness challenges where clarification was otherwise available. *See, e.g., Halstien*, 122 Wn.2d at 118-19 ("sexual motivation" is not too vague where its definition in a related statute clarifies its reach); *State v. Sigman*, 118 Wn.2d 442, 446, 826 P.2d 144 (1992) ("knowingly" is not too vague because it is defined by statute and "has an ordinary and accepted meaning").

¶18 We conclude that Watson has not overcome the presumption of constitutionality in this case. Because there

is case law and legislative guidance available to clarify the requirements of the sex offender registration statute, we hold that it is not unconstitutionally vague as to whether sex offenders must reregister when they are released from incarceration that was due to violation of their probation for a sex offense.[4] Accordingly, we affirm the Court of Appeals' decision upholding Watson's conviction.

C. JOHNSON, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶19 SANDERS, J. (dissenting) — The majority holds a sex offender must reregister to his same address after he has been released from custody for a probation violation. I disagree. The statute in question says nothing about reregistering for the same offense. At worst, the statute is unconstitutionally vague as applied to Eric Watson if we do not follow the rule of lenity, which compels us to construe any ambiguity in his favor. But the plain meaning of the literal statutory language demonstrates Watson did exactly what was required. The statute requires Watson to register at the time of his initial release. Watson did this and punishing him for not doing what the statute does not require violates not only the statute but also fundamental principles of due process and fairness.

¶20 Our law requires sex offenders to register their address with local law enforcement after they are released from custody. Specifically, RCW 9A.44.130(4)(a)(i) provides:

Sex offenders who committed a sex offense on, before, or after February 28, 1990, and who, on or after July 28, 1991, are in custody, as a result of that offense . . . must register at the time of release from custody with an official designated by the agency that has jurisdiction over the offender.

¶21 Watson was convicted in 1993 of first degree child molestation and was released into community custody in

---

[4] Because there is no separate ambiguity challenge before us in this case, we decline the dissent's invitation to consider whether the rule of lenity should be used. The rule of lenity is a tool of statutory construction and not the proper remedy for a void for vagueness challenge.

2003. Immediately thereafter he registered his address with the Pierce County Sheriff's Department. Watson fully complied with the statute: he was in custody as a result of a sex offense, and at the time of his release from custody for that offense, he registered with an official who had jurisdiction over him. Yet the State now seeks to punish him because he did not reregister after he was reincarcerated for community custody violations. But the statute does not say Watson must reregister after *each* release from custody nor reregister the *same address* for the *same offense*.

¶22 To read the statute as urged by the majority renders the statute vague because one cannot understand what is prohibited when the statute itself is silent about such conduct.

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. . . .

*Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); *see also Connally v. Gen. Constr. Co.*, 269 U.S. 385, 393, 46 S. Ct. 126, 70 L. Ed. 322 (1926) (" 'The dividing line between what is lawful and unlawful cannot be left to conjecture.' " (quoting *United States v. Capital Traction Co.*, 34 App. D.C. 592, 598 (1910)). Watson's due process rights are violated if he is punished for something he could not know he needed to do or if he must guess the law's requirements. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939) (New Jersey statute "condemns no act or omission; the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment." *Id.* at 458.). The statute before us today fails

to explicitly condemn that for which the majority sends this man to prison.

¶23 Certainly the statute's silence cannot be said to clearly require Watson to reregister. Therefore, at worst, the statute is ambiguous. A statute is ambiguous when reasonable people must guess at the statute's meaning. "The touchstone of the 'fair notice' principle is that the statute or ordinance must be sufficiently specific that 'men of reasonable understanding are not required to guess at the meaning of the enactment.'" *City of Seattle v. Rice*, 93 Wn.2d 728, 731, 612 P.2d 792 (1980) (quoting *City of Seattle v. Drew*, 70 Wn.2d 405, 408, 423 P.2d 522 (1967)). A person of reasonable understanding would certainly be forced to guess at the statute's silence to know he must register, again, even though his address is the same.

¶24 And when a criminal statute is ambiguous, we are compelled to construe it. And when we construe a criminal statute, we must apply the rule of lenity, which strictly and narrowly construes ambiguous statutes in favor of the defendant. *United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) ("[T]he canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct *clearly* covered." (emphasis added)); *State v. Jacobs*, 154 Wn.2d 596, 603, 115 P.3d 281 (2005) ("Under the rule of lenity, where a statute is ambiguous, we must interpret it in favor of the defendant."); *see also United States v. Enmons*, 410 U.S. 396, 411, 93 S. Ct. 1007, 35 L. Ed. 2d 379 (1973) (criminal statutes "must be strictly construed, and any ambiguity must be resolved in favor of lenity"). Therefore, either RCW 9A.44.130 should be read to require Watson to register his address only once (the only conduct the statute clearly requires) or we must construe any ambiguity in Watson's favor. Under neither alternative can the State punish Watson for failing to reregister.

¶25 Rather than apply the rule of lenity, however, the majority claims when Watson was released from custody for

a probation violation, it was as "a result of" his original conviction because a probation violation " 'relates back to the original conviction.' " Majority at 8 (quoting *State v. Eilts*, 94 Wn.2d 489, 494 n.3, 617 P.2d 993 (1980)). But this construction is irrelevant: regardless of whether a probation violation relates back to the original offense, nothing in the statutory language says Watson must register once again. Furthermore, contrary to its claim, the majority's holding does not further the statute's goals. Majority at 9-10. The statute is meant to help law enforcement track sex offenders released into the community: " '[T]his state's policy is to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local law enforcement . . . .' " Majority at 9 (quoting Laws of 1990, ch. 3, § 401). Law enforcement officials accomplish this goal by keeping "informed of the whereabouts of sex offenders." *Id.* at 10. The police knew where Watson was living: they knew his address when he was released in January 2003 and they knew his address when he was released in July 2003.

¶26 Finally, the majority equates Watson's incarceration and release with moving to the local jail and then moving back to his home. Majority at 10. Under 9A.44.130(5), if he moved to a new residence and then returned to a previous residence, Watson would indeed need to reregister—twice. But clearly Watson did not *move* to the jail, and he maintained the same address. Extending the majority's argument to its logical conclusion, Watson must reregister whenever he is held in jail, even if only overnight.

¶27 The statute requires Watson to register his address after release from custody. Watson did this in January 2003. Nothing in the statute says he must register, again, for the same offense at the same address. Watson should not be forced to look beyond what the statute says and construe its silence against him. By judicial invention, which adds unwritten requirements into a penal statute,

16

the majority derogates clear rules of statutory construction, the United States Constitution, and the rule of law.

¶28 I dissent.

MADSEN, CHAMBERS, and J.M. JOHNSON, JJ., concur with SANDERS, J.

[No. 200,376-1. En Banc.]
Argued January 25, 2007.  Decided April 12, 2007.