FILED
COURT OF APPEALS
DIVISION II

2014 JUN 17 AM 8: 36

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44173-0-II |
| Respondent, | |
| v. | |
| LESTER JIM JAMES, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Following a bench trial, the trial court found Lester James guilty of failure to register as a sex offender. James appeals his conviction and sentence, asserting that (1) the sex offender registration statute, RCW 9A.44.130, is unconstitutionally vague as applied, (2) the State failed to present sufficient evidence in support of his conviction, (3) the trial court violated his right to confrontation by limiting the scope of his cross-examination of a witness, and (4) the trial court miscalculated his offender score. We affirm.

## FACTS

James is a convicted sex offender required to register his residence under RCW 9A.44.130. In August and October of 2011, James registered his address as unit 1 of an apartment complex in Longview, Washington.

On December 21, 2011, Olga Lozano, a civilian investigator for the Longview Police Department, went with Detective Danielle Jenkins to James's registered address to verify that he was living there. They were not able to make contact with James on that date. Lozano again went to the Longview apartment complex to verify James's registered address on January 4,

2012 and January 8, 2012, but she was unable to make contact with James on either date. The State charged James with failure to register as a sex offender, alleging that he committed the offense on, about, or between the dates of November 1, 2011 and January 11, 2012.

At trial, Lozano testified that when she went to James's registered address on January 8, Richard Barnard was at the apartment. Before calling Barnard to testify, the State moved to exclude evidence of Barnard's sex offender registration status, asserting that Barnard's status was not relevant to any issue in the case. James's defense counsel opposed the State's motion and argued that Barnard's status was relevant to show "his motives to give answers that he believes the prosecution will want in order to curry favor in the prosecution's eyes." Report of Proceedings (RP) at 66. The trial court agreed with the State and excluded evidence related to Barnard's status as a registered sex offender.

Barnard testified that he moved into unit 1 of the Longview apartment complex on January 5, 2012, that the unit was unoccupied when he moved in, and that he did not have any roommates during the month of January. Barnard further testified that when he moved into the unit, the unit was empty apart from some clothing, soap, and shampoo. Barnard stated that he gave these items away and that no one came to the apartment to claim them. Barnard also stated that the first time he met James was a month or two after moving into unit 1. When defense counsel cross-examined Barnard, the following exchange took place:

> [Defense counsel]: . . . And you're sure this was on the 5th that you—
> [Barnard]: Yes, I got out of prison on the 5th.
> [Defense counsel]: Out of prison where?
> [Barnard]: Uh, Monroe.
> [Defense counsel]: Monroe, for what?
> [State]: Objection, Your Honor. Relevance?
> [Trial court]: Sustained. Sustained.
>
> . . . .

> [Defense counsel]: You have to register as a sex offender?
> [State]: Objection, Your Honor. Relevance?
> [Trial court]: Sustained.
> [Defense counsel]: Your Honor, once again, so I can make my record here, should it be necessary—uh—this person's registration status, why they're in custody right—why he's in custody right now, is all relevant to his motivation on how he answers the questions that were prepared by the prosecution and the Defense. Uh, he's in custody. Uh, he always has a Defense with him—uh—charged with failure to register himself. This is highly relevant to his credibility.

RP at 72-73.

Brian Weathers, a property manager for the Longview apartment complex, testified that he had a conversation with James in January 2012, about James's rent being past due since December 25, 2011. According to Weathers, James stated that he did not have any rent money at that time, but that he could pay his rent after receiving his tax return. Weathers testified that he had agreed to James's proposal but that James never paid his past due rent. Weathers stated that he did not evict James from the unit before renting it to Barnard. Weathers also stated that he knew James had items from a rent-to-own store while living in unit 1.

James testified that he received $2,000 a month from the Puyallup Tribe of Indians and that his rent for unit 1 of the Longview apartment complex was around $300 per month. James further testified that he could not make his December 25, 2011 rent payment because he had spent his money on funeral costs for an individual that James considered to be his son. James stated that, because he was emotionally distraught over the loss of his son, he spent several nights with family members in Shelton and at Andrew Alston's home in Kelso; James became friends with Alston when Alston lived in a different unit at the Longview apartment complex. James also stated that when he spent nights at Alston's home, he would bring a backpack

containing a change of clothes. James testified that he had helped Alston pay for rent or food when he came to visit but denied that he had lived at Alston's home.

Alston testified that James spent several nights at his home but stated that James did not live there. Additionally, contrary to James's testimony, Alston testified that James never brought a backpack with him when he came to visit, and that James did not help pay for rent. The trial court found James guilty of failure to register as a sex offender, calculated his offender score at 9, and sentenced him to 43 months of incarceration and 36 months of community custody. James timely appeals his conviction and resulting sentence.

ANALYSIS

I. RCW 9A.44.130

James first contends that RCW 9A.44.130 is unconstitutionally vague as applied because the statute does not sufficiently define what it means to "change" one's "residence." We disagree.

The constitutionality of a statute is a question of law that we review de novo. *State v. Watson*, 160 Wn.2d 1, 5-6, 154 P.3d 909 (2007). Where, as here, the challenged statute "does not involve First Amendment rights, we evaluate the vagueness challenge by examining the statute as applied under the particular facts of the case." *State v. Jenkins*, 100 Wn. App. 85, 89, 995 P.2d 1268 (2000) (citing *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992)). We presume statutes to be constitutional, and the challenger bears the burden of proving vagueness beyond a reasonable doubt. *Coria*, 120 Wn.2d at 163. To meet this burden, James "must show, beyond a reasonable doubt, that either (1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) the

statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *Coria*, 120 Wn.2d at 163. James appears to challenge the constitutionality of RCW 9A.44.130 only on the first ground.

With regard to this first ground, "[t]he due process clause of the Fourteenth Amendment to the United States Constitution requires statutes to provide fair notice of the conduct they proscribe." *Watson*, 160 Wn.2d at 6. To meet this standard, "the language of a penal statute 'must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" *Watson*, 160 Wn.2d at 6-7 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)). And, "[a] statute fails to provide the required notice if it 'either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Watson*, 160 Wn.2d at 7 (quoting *Connally*, 269 U.S. at 391). But "a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his [or her] actions" become prohibited conduct. *Watson*, 160 Wn.2d at 7 (alteration in original) (internal quotation marks omitted). Rather, "a statute meets constitutional requirements '[i]f persons of ordinary intelligence can understand what the ordinance proscribes, notwithstanding some possible areas of disagreement.'" *Watson*, 160 Wn.2d at 7 (alteration in original) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)).

RCW 9A.44.130 sets forth the registration requirements for convicted sex offenders and provides in relevant part:

> (4)(a) If any person required to register pursuant to this section changes his or her residence address within the same county, the person must provide, by certified mail, with return receipt requested or in person, signed written notice of the change of address to the county sheriff within three business days of moving.

(b) If any person required to register pursuant to this section moves to a new county, the person must register with that county sheriff within three business days of moving. Within three business days, the person must also provide, by certified mail, with return receipt requested or in person, signed written notice of the change of address in the new county to the county sheriff with whom the person last registered. . . .

(5)(a) Any person required to register under this section who lacks a fixed residence shall provide signed written notice to the sheriff of the county where he or she last registered within three business days after ceasing to have a fixed residence. . . .

(b) A person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered. . . .

An offender who knowingly fails to comply with the registration requirements of RCW 9A.44.130 commits the crime of failure to register as a sex offender. RCW 9A.44.132.

James argues that RCW 9A.44.130(4)'s registration requirements are unconstitutionally vague as applied to him because the statute does not define "residence" or "residence address." But in the absence of a statutory definition, we give words used in a statute their ordinary meaning. *State v. Alvarez*, 128 Wn.2d 1, 11, 904 P.2d 754 (1995). And Washington cases have repeatedly applied an ordinary meaning to the term "residence" when interpreting the provisions of RCW 9A.44.130.

For example, in *State v. Pickett*, 95 Wn. App. 475, 975 P.2d 584 (1999), Division One of this Court analyzed a former version of RCW 9A.44.130 to determine whether sufficient evidence supported a conviction for failure to register as a sex offender where the accused was

6

homeless during the alleged commission of the offense.[1] In holding that there was insufficient evidence in support of the defendant's conviction, the *Pickett* court relied on the ordinary meaning of the word "residence," stating, "Residence as the term is commonly understood is the place where a person lives as either a temporary or permanent dwelling, a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit." 95 Wn. App. at 478. And in *Jenkins*, we relied on the *Pickett* court's statement of the ordinary meaning of "residence" in holding that a former version of RCW 9A.44.130 was unconstitutionally vague as applied because the statute did not indicate whether an offender met registration obligations by providing a mailing address as opposed to a residential address.[2] 100 Wn. App. at 91.

That prior case law has recognized this ordinary meaning of "residence" as used in RCW 9A.44.130 defeats James's claim that the term is unconstitutionally vague as applied. In *Watson* our Supreme Court reasoned that "[b]ecause of the inherent vagueness of language, citizens may need to utilize other statutes and court rulings to clarify the meaning of a statute." 160 Wn.2d at 8. And, in reviewing constitutional vagueness claims, we presume that such court rulings are "'available to all citizens.'" *Watson*, 160 Wn.2d at 8 (quoting *Douglass*, 115 Wn.2d at 180) (internal quotation marks omitted). Accordingly, in reviewing James's vagueness claim we adopt the ordinary meaning of "residence" as stated in *Pickett*, which case we presume was available to James to clarify his understanding of registration obligations under RCW 9A.44.130.

---

[1] The legislature has since amended RCW 9A.44.130 to correct the infirmity identified in *Pickett*, and the statute now includes reporting provisions applicable to offenders that are homeless. *See* LAWS OF WASHINGTON 1999, 1st Spec. Sess., ch. 6, §1-2.

[2] The legislature has since amended RCW 9A.44.130 to correct this infirmity and the statute now provides that an offender must provide a "complete residential address" when registering. *See* LAWS OF WASHINGTON 2006, ch. 126, § 1.

Applying this ordinary meaning of the word "residence" to the facts here, we hold that a person of common intelligence would understand RCW 9A.44.130(4) to require an offender to register within three business day of changing "the place where [the offender] lives as either a temporary or permanent dwelling, a place to which [the offender] intends to return, as distinguished from a place of temporary sojourn or transient visit." *Pickett*, 95 Wn. App. at 478. Accordingly, James has failed to show beyond a reasonable doubt that RCW 9A.44.130 is unconstitutionally vague as applied to him.

## II. SUFFICIENCY OF THE EVIDENCE

Next, James contends that the State failed to present sufficient evidence in support of his conviction. Again, we disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

To convict James of failure to register as a sex offender as charged here, the State had to prove beyond a reasonable doubt that James (1) had a duty to register under RCW 9A.44.130 for a felony sex offense and (2) knowingly failed to register within three business days of either (a) changing his residence or (b) ceasing to have a fixed residence. RCW 9A.44.130(4)-(5); RCW

9A.44.132. James argues that sufficient evidence did not support his conviction because the State failed to present evidence showing that he did not intend to return to his registered address.[3] We disagree. The evidence at trial showed that James ceased paying rent for his apartment at the end of 2011 and started helping Alston pay for rent and food while staying at Alston's home. Additionally, Barnard testified that he moved into unit 1 of the Longview apartment complex on January 5, that the unit was unoccupied when he moved in, and that he first met James months after moving into the unit. Although Barnard testified that there were some clothing and toiletry items in the unit when he moved in, he also testified that nobody came to claim those items. Additionally, Weathers testified that James had possessed items from a rent-to-own store when he lived in unit 1, which items were not present when Barnard moved into the unit. Taken together, and viewed in a light most favorable to the State, this was ample evidence that James did not intend to return to his registered address and, thus, was required to register under RCW 9A.44.130.

James also argues that sufficient evidence did not support the mens rea element that he "knowingly" failed to register. We disagree. At trial, the State presented a registration notification document that James had signed in August, 2011. The registration notification document contained provisions mirroring the language of RCW 9A.44.130(4)-(5). And James entered his initials next to each of these provisions, indicating that he had "read and understood" the provisions. Exhibit 1 at 3-4. Thus, the evidence showed that James was aware of his

---

[3] In advancing this claim, James asserts that the ordinary meaning of "residence" as stated in *Pickett* should apply. We agree. *See also State v. Drake*, 149 Wn. App. 88, 94-95, 201 P.3d 1093 (2009) (applying the *Pickett* court's definition of residence and holding that there was insufficient evidence that the defendant did not intend to return to his registered address).

registration obligations and, therefore, knowingly failed to comply with those obligations by not informing the county sheriff within three business days of either changing his residence or ceasing to have a fixed residence. Accordingly, we hold that sufficient evidence supported James's conviction for failure to register as a sex offender.

### III. RIGHT OF CONFRONTATION

Next, James contends that the trial court's ruling limiting the scope of his cross-examination of Barnard violated his constitutional right of confrontation. Again, we disagree.

Both the state and federal constitutions protect the right to confrontation, including the right to conduct a meaningful cross-examination of adverse witnesses. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). The purpose of cross-examination is to test the witness's perception, memory, and credibility. *Darden*, 145 Wn.2d at 620. But the right to cross-examination is not absolute. *Darden*, 145 Wn.2d at 620. A trial court may deny cross-examination if the evidence sought is vague, argumentative, speculative, or simply irrelevant. *Darden*, 145 Wn.2d at 620–21. And, "[w]here the right [to cross-examination] is not altogether denied, the scope or extent of cross-examination for the purpose of showing bias rests in the sound discretion of the trial court." *State v. Robbins*, 35 Wn.2d 389, 396, 213 P.2d 310 (1950). Accordingly, we will not disturb a trial court's decision limiting the scope of cross-examination absent a manifest abuse of that discretion. *State v. Campbell*, 103 Wn.2d 1, 20, 691 P.2d 929 (1984).

James asserted at trial that evidence of Barnard's sex offender registration status was relevant to show Barnard's "motives to give answers that he believes the prosecution will want in order to curry favor in the prosecution's eyes." RP at 66. But evidence of Barnard's sex offender registration status, alone, had no tendency to make it more or less probable that he would tailor his testimony to "curry favor" with the State. *See* ER 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). And the trial court's evidentiary ruling did not prohibit defense counsel from questioning Barnard about his motive to testify, whether the State had pending charges against him, or whether the State had promised him anything in exchange for his testimony. Accordingly, we hold that the trial court did not violate James's confrontation right by excluding irrelevant evidence.

## IV. OFFENDER SCORE CALCULATION

Finally, James contends that the trial court erred in calculating his offender score at 9 because the trial court scored one point for James's conviction of violation of a domestic abuse protection order, which offense James contends is "generally" a gross misdemeanor and, thus, should not have been included in his offender score calculation. Because James cannot demonstrate on this record that the trial court miscalculated his offender score by including in its calculation James's prior offense of violation of a domestic abuse protection order, we affirm his sentence.

Under the sentencing provision applicable to James's conviction for failure to register as a sex offender, RCW 9.94A.525(18), the trial court was required to add 1 point to James's offender score for each of his prior adult felony convictions. A statement of James's criminal history, which James affirmatively agreed was correct at his sentencing hearing, lists a prior adult conviction for violation of a domestic violence protection order. Former RCW 26.50.110 (2006) provides that the violation of a court's protection order is a gross misdemeanor except that:

> (4) Any assault that is a violation of an order issued under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

> (5) A violation of a court order issued under this chapter, chapter 7.90, 9A.46, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or a valid foreign protection order as defined in RCW 26.52.020. The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

On this record, we cannot determine whether James's prior conviction for violation of a domestic violence protection order was a misdemeanor or, instead, was a class C felony under former RCW 26.50.110(4)-(5). Because facts outside the record are necessary for us to determine whether the trial court, in fact, miscalculated James's offender score, we decline to reach this issue on the merits. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251

No. 44173-0-II

(1995) (Reviewing courts do not consider matters outside the trial record on direct appeal.). We affirm James's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Melnick, J.

13