## Thomas Kenney, petitioner.

No. 04-P-435.

Hampden. April 6, 2006. - July 13, 2006.

Present: Cypher, Berry, & Doerfer, JJ.

*Due Process of Law,* Sex offender. *Jurisdiction,* Sex offender, Delinquent child. *Juvenile Court,* Delinquent child. *Sex Offender. Delinquent Child. Evidence,* Juvenile delinquency. *Department of Youth Services.*

A twenty-nine month delay between the petitioner's temporary commitment, pursuant to G. L. c. 123A, § 12(*e*), to a treatment center as a sexually dangerous person and his probable cause hearing did not violate his due process rights or require a dismissal with prejudice of the Commonwealth's petition to commit him, where the petitioner was substantially responsible for the delay, and where, in any event, § 12(*e*) did not contemplate dismissal of the petition as a remedy for delay. [711-712]

There was no merit to the argument of the petitioner, whose commitment to the custody of the Department of Youth Services (department) was extended until his twenty-fourth birthday because of his temporary commitment as a sexually dangerous person, that the department was not an "agency with jurisdiction" under G. L. c. 123A, § 12(*a*). [712-714]

At the trial of a petition to commit the petitioner civilly as a sexually dangerous person, there was no error in the admission in evidence of the petitioner's juvenile records, which are generally confidential pursuant to G. L. c. 119, § 60, where G. L. c. 123A, § 14(*c*), specifically provided for the use of Juvenile Court records and reports at a trial on sexual dangerousness. [714-715]

Where the petitioner failed to exercise at trial any statutory privilege with regard to certain treatment records about which a witness testified, the petitioner could not argue such a privilege for the first time on appeal; further, even if the petitioner had not waived the issue, he failed to establish that any privilege applied, and to the extent that any privilege existed, the petitioner waived the defense of privilege by his use of the records on cross-examination. [715]

Civil action commenced in the Superior Court Department on April 11, 2000.

The case was tried before *John A. Agostini,* J.

*Edward E. Eliot* for the defendant.

*Thomas H. Townsend*, Assistant District Attorney, for the Commonwealth.

CYPHER, J. On January 28, 2003, a jury found the petitioner, Thomas Kenney, sexually dangerous pursuant to G. L. c. 123A. The petitioner claims that (1) the delay of twenty-nine months between his temporary commitment and a finding of probable cause violated his due process rights, requiring that we vacate the judgment; (2) the Department of Youth Services (DYS) had no jurisdiction over the petitioner after his twenty-first birthday and, therefore, the judge should have dismissed the petition; (3) his juvenile records should not have been admitted in evidence and should not have been released to the district attorney; and (4) the qualified examiner should not have been permitted to testify about the petitioner's juvenile records. We affirm.

*Background.* On March 1, 1990, the petitioner admitted to sufficient facts to a charge of raping a six year old girl in 1989, when he was fourteen. He was adjudicated delinquent and committed to DYS with a suspended sentence and probation. On December 5, 1990, the petitioner pleaded guilty to two charges of indecent assault and battery on two different female children, both aged nine. He was found to be in violation of his probation and was committed to DYS custody. From December, 1992, through December, 1996, DYS filed three orders of application to review the order of commitment under G. L. c. 120, § 17.[1] The orders were granted, and as a result, the petitioner's commitment was extended until March 12, 1999, his twenty-fourth birthday.

On March 11, 1999, DYS filed its fourth order and application to review the order of commitment. The petitioner moved to dismiss on the grounds that the fourth order had been filed less than ninety days before the expiration of the third order, as required by statute. G. L. c. 120, § 17 (prior to 1996).[2] The motion was denied on April 26, 1999. Six months later, the

---

[1]The statute provides: "Whenever the department is of the opinion that discharge of a person from its control at the age limit stated in section sixteen would be physically dangerous to the public, the department shall make an order directing that the person remain subject to its control beyond the period and shall make application to the committing court for a review of that order by the court." G. L. c. 120, § 17, as amended by St. 1990, c. 267, § 7.

[2]Prior to 1996, § 17 required the order and application be made at least ninety days before discharge. The second sentence now states that the order

Legislature enacted the new sexually dangerous person statute, G. L. c. 123A. The fourth order was never acted on by the Juvenile Court.

On January 18, 2000, DYS notified the district attorney's office that the petitioner was an appropriate person for commitment as a sexually dangerous person under G. L. c. 123A. On April 11, 2000, the Commonwealth filed a petition to commit the petitioner, and on April 20, 2000, the petitioner was temporarily committed to a treatment center under G. L. 123A, § 12(e). After twenty-nine months of delay, for which the petitioner was substantially responsible, a probable cause hearing was conducted on September 16, 2002, and probable cause was found on September 20, 2002.

Trial was held in January, 2003. At trial, the parties stipulated that the petitioner met the first prong of the definition of a sexually dangerous person (that he had been convicted of an enumerated sex offense).

*Discussion.* 1. *The twenty-nine month delay.* The petitioner claims that the twenty-nine month delay between his temporary commitment and his probable cause hearing violated his due process rights and should result in a dismissal with prejudice of the petition. "[A]bsent unusual circumstances, a probable cause hearing should commence no later than ten business days after a temporary commitment order is made under § 12(e)." *Commonwealth* v. *Bruno,* 432 Mass. 489, 513 (2000). In *Commonwealth* v. *Kennedy,* 435 Mass. 527, 530 n.3 (2001), the Supreme Judicial Court did not reach the question "whether lesser violations of the deadlines in G. L. c. 123A may result in some lesser sanction," but nevertheless observed that "the liberty interests at stake compel strict adherence to the time frames set forth in the statute," *id.* at 531. Although the time frame ought to be adhered to, and twenty-nine months appears to be an unreasonable delay, there are several problems with the petitioner's argument.

First, he raises this issue for the first time on appeal. He never moved "for relief from such temporary commitment at any time prior to the probable cause determination," as provided

and application "may be made at any time prior to discharge." G. L. c. 120, § 17, as amended through St. 1996, c. 200, § 29.

by G. L. c. 123A, § 12(*e*). Compare *Commonwealth* v. *Bunting*, 401 Mass. 687, 690 (1988) ("defendant's failure to object to delay and failure to press for trial [implies] consent to delay").

Second, the petitioner claims that he never acquiesced to the delay; however, he has not attempted to demonstrate to us where the responsibility for the delay lies. See *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958) (party seeking review of a point has a "duty to assist the court with argument and appropriate citation of authority"). Nevertheless, we have reviewed the docket and have concluded that the petitioner caused substantially all of the delay by filing repetitive motions to dismiss the petition, requests for changes of counsel, and for continuances. See *Commonwealth* v. *Lamb*, 368 Mass. 491, 498 (1975) (delay was caused in large part by time spent on procedural steps taken by or on behalf of the defendant). Finally, even if there was undue delay attributable to the Commonwealth, the appropriate remedy would have been release pending the outcome of the probable cause hearing, not dismissal of the petition. General Laws c. 123A, § 12(*e*), inserted by St. 1999, c. 74, § 8, specifically provides that "[t]he person named in the petition may move the court for relief from such temporary commitment at any time prior to the probable cause determination." Contrast *Commonwealth* v. *Kennedy*, 435 Mass. at 530 (G. L. c. 123, § 13[*a*], mandates commitment); *Commonwealth* v. *Parra*, 445 Mass. 262, 267 (2005) (*after* a finding of probable cause that a defendant is a sexually dangerous person, the statute mandates commitment; thus, a judge has no discretion to order release). Section 12(*e*) of the statute does not contemplate dismissal of the petition as a remedy for delay. "Where the statutory language is clear, courts apply the plain and ordinary meaning of that language." *Commonwealth* v. *Kennedy, supra* at 530.

2. *The motion to dismiss.* The petitioner argues that DYS was not an "agency with jurisdiction" under G. L. c. 123A, § 12(*a*), arguing that his detention by DYS was unlawful and that the Superior Court judges should have allowed his motion to dismiss. "[A]gency with jurisdiction" is defined as "the agency with the authority to direct the release of a person presently incarcerated, confined or committed to the department of youth

services." G. L. c. 123A, § 1, inserted by St. 1999, c. 74, § 3. The definition refers to the actual fact of incarceration and not to the lawfulness of the detention. Section 12(*a*) merely provides for the commencement of proceedings under the statute. There is nothing in § 12 to suggest that the Legislature intended the phrase "agency with jurisdiction" to serve as a basis for collateral attacks on the underlying detention.[3] Cf. *People* v. *Hubbart*, 106 Cal. Rptr. 2d 490, 509 (2001) (lawful custody is not a prerequisite to the fundamental jurisdiction of a court to proceed on a sexually violent predator petition). Furthermore, the purposes of the sexually dangerous persons commitment statute — public protection and the treatment and rehabilitation of the sexually dangerous, *Commonwealth* v. *Bruno*, 432 Mass. at 500 — would not be advanced by treating alleged unlawful custody as a jurisdictional barrier to a petition for commitment. Cf. *Garcetti* v. *Superior Ct.*, 80 Cal. Rptr. 2d 724, 732 (1998) (where questionable custody is not attributable to negligent or intentional wrongdoing by the State, but instead results from a mistake in law, the error does not undermine the legitimacy of the commitment proceedings).

The petitioner also claims that the judge erroneously determined that the pre-1990 version of G. L. c. 120, § 17, applied to his detention in DYS and, therefore, that multiple extensions of the juvenile's commitment beyond the age of twenty-one were permitted.[4] However, under G. L. c. 120, § 17, jurisdiction remained with the Juvenile Court as the original committing court. As such, the Superior Court could not ad-

---

[3]The petitioner also argues that counsel was ineffective for failing to file a motion for release in the Juvenile Court. This claim should have been brought in the underlying case.

[4]In *Commonwealth* v. *Kelley*, 411 Mass. 212, 215 (1991), the Supreme Judicial Court concluded that the 1990 amendment to G. L. c. 120 increased punishment beyond that which could have been imposed at the time of the offense by increasing the time period of an extension order to age twenty-one and was an ex post facto law. "[T]he determination whether a statute retroactively increases the burdens on criminal defendants must be made by an analysis that 'looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual.'" *Commonwealth* v. *Fuller*, 421 Mass. 400, 409 (1995), quoting from *Weaver* v. *Graham*, 450 U.S. 24, 33 (1981).

dress issues related to the propriety of the DYS extensions, and the issues are not properly before us on appeal.[5]

3. *The petitioner's juvenile records.* The petitioner claims that G. L. c. 119, § 60,[6] as amended through St. 1992, c. 398, § 2, which provides that juvenile records are confidential, should have prohibited the district attorney from having access to the records and that the records should not have been admitted at his trial. The petitioner's argument fails in light of G. L. c. 123A, § 14(*a*), which designates the district attorney as the prosecuting authority, and G. L. c. 123A, § 14(*c*), which states that such records are admissible at trial. It is implicit in G. L. c. 123A that the district attorney will have access to the juvenile's records in order to make the threshold determination whether the youth in custody "is likely to be a sexually dangerous person" and in order to "stat[e] sufficient facts to support such [an] allegation" if a petition is filed. G. L. c. 123A, § 12(*b*). Access to the juvenile records is also necessary for the district attorney so that he or she may conduct the probable cause hearing as well as the trial. Compare *Doe* v. *Attorney Gen.*, 425 Mass 210, 215-216 (1997) (information contained in juvenile delinquency records must be disclosed to the extent required by the sex offender act [G. L. c. 6, §§ 178C through 178O]).

To the extent that G. L. c. 123A and G. L. c. 119, § 60, conflict, basic principles of statutory construction resolve the matter in favor of disclosure. First, c. 123A is more recent. "When a new provision conflicts with a prior statute, the new provision, as the last expression of the Legislature, controls." *Doe* v. *Attorney Gen.*, *supra* at 215, citing 2B Singer, Sutherland Statutory Construction § 51.02, at 121 (5th ed. 1992). Second, c. 123A is more specific. General Laws c. 119, § 60, concerns the general rules governing confidentiality of Juvenile

[5]With regard to the petitioner's claim that DYS had a duty to confirm its fourth extension with an order before acting as an "agency with jurisdiction," we again note that the proceeding to commit the petitioner as a sexually dangerous person was not the proper forum for the petitioner to collaterally attack the DYS detention.

[6]"An adjudication of any child as a delinquent child under sections fifty-two to fifty-nine . . . , or any evidence . . . , or any records . . . , shall not be received in evidence or used against such child for any purpose in any proceedings in any court except in subsequent delinquency or criminal proceedings against the same person." G. L. c 119, § 60.

Court records. General Laws c. 123A, § 14(*c*), specifically provides for the use of Juvenile Court records and reports at a trial on sexual dangerousness. There was no error.

4. *The qualified examiner's testimony.* The petitioner argues that the qualified examiner should not have been permitted to testify about the juvenile treatment records and should not have been permitted to read portions of the records to the jury because the records were privileged. The petitioner did not attempt to exercise any statutory privilege at trial; therefore, he cannot do so now on appeal. *Commonwealth* v. *Benoit*, 410 Mass. 506, 518 (1991). The petitioner claims, based on a statement by the prosecutor, that he had an agreement with the prosecutor before trial that he had preserved his rights regarding his argument that the records were confidential. As we read the record, however, it appears that this agreement referred to arguments defense counsel had raised regarding the confidentiality of the juvenile records under G. L. c. 119, § 60, and did not concern privilege. "[T]he privilege issue cannot now be raised as a second thought of appellate counsel." *Adoption of Abigail*, 23 Mass. App. Ct. 191, 198 (1986).

Even if we were to conclude that the petitioner had not waived the issue, he has failed to establish that any privilege applies. See *Miller* v. *Milton Hosp. & Med. Center, Inc.*, 54 Mass. App. Ct. 495, 499 (2002). In addition, the psychological evaluations referred to by the testifying doctor concerned evaluations in which each evaluator informed the petitioner that the interview was not privileged. See *Commonwealth* v. *Lamb*, 365 Mass. 265, 270 (1974); *Commonwealth* v. *Rosenberg*, 410 Mass. 347, 354 (1991) (evidence indicated that defendant was told on numerous occasions by his therapist and case worker that the conversations were not confidential).

Finally, to the extent any privilege existed, the petitioner waived the defense of privilege by use of the reports on cross-examination. See *Care & Protection of Bruce*, 44 Mass. App. Ct. 758, 764-765 (1998).

*Judgment affirmed.*