169 P.3d 852 (2007)
In re the Detention of John W. KEENEY, Petitioner.
No. 25277-9-III.
Court of Appeals of Washington, Division 3.
October 23, 2007.
*853 Richard George Wernette, McAdams Ponti Wernette & Vandorn PS, Walla Walla, WA, for Appellant.
Malcolm Ross, Attorney General of Washington, Seattle, WA, for Respondent.
KULIK, J.
¶ 1 John W. Keeney was committed as a sexually violent predator (SVP). He asserts that the SVP statute is unconstitutionally *854 vague; that his right to a unanimous jury verdict was violated; and that the trial court lacked jurisdiction to entertain the SVP commitment hearing because Mr. Keeney was unlawfully imprisoned at the time.
¶ 2 Mere uncertainty is insufficient to establish that a statute is unconstitutionally vague. And our Supreme Court has rejected a general claim that the SVP statute is unconstitutionally vague. Specifically, we hold RCW 71.09.020(7) to be constitutional and we reject Mr. Keeney's additional assertions of error. We affirm.

FACTS
¶ 3 John W. Keeney was convicted of second degree child molestation and sentenced to 100 months' incarceration, with credit for time served. Mr. Keeney had previously been convicted of second degree rape. The latest possible date that the State could keep Mr. Keeney incarcerated for the child molestation conviction was September 29, 2004. Mr. Keeney had an expected early release date of October 16, 2002.
¶ 4 Several months prior to Mr. Keeney's expected early release date, the End of Sentence Review Committee asked a clinical and forensic psychologist to evaluate Mr. Keeney to determine whether he met the criteria as a SVP. The psychologist found that Mr. Keeney did meet the statutory criteria of a SVP. The committee then forwarded the case to the Walla Walla County prosecutor to begin SVP commitment proceedings.
¶ 5 During this same period, Mr. Keeney submitted his community release plan to the Department of Corrections (DOC), seeking early release. His plan was rejected by the DOC based on "Policy 350.200." Clerk's Papers (CP) at 171. The DOC will not approve a community release plan under Policy 350.200 if the End of Sentence Review Committee determined that the offender meets the criteria for referral as a SVP. Because Mr. Keeney was determined by the committee to meet the SVP criteria, Mr. Keeney's community release plan was denied.
¶ 6 On September 24, 2004, the State petitioned the trial court to commit Mr. Keeney as a SVP pursuant to chapter 71.09 RCW. This was five days prior to the last possible date that the State could incarcerate Mr. Keeney under the maximum term of his sentence.
¶ 7 Mr. Keeney moved to dismiss the commitment proceedings, arguing that the SVP statute did not define a period of time during which the defendant more probably than not would offend and, thus, was unconstitutionally vague and violated due process. According to Mr. Keeney, this allowed the jury to consider any time period, thereby allowing the jury to legislate what the law is in each case.[1] The trial court denied the motion.
¶ 8 Mr. Keeney again moved for dismissal. In his second motion, he argued that he was unlawfully imprisoned by the State for 23 months, and that the trial court should dismiss the State's SVP commitment petition because of that unlawful imprisonment. Again, the trial court denied this motion.
¶ 9 The jury heard evidence of numerous sexual assaults committed by Mr. Keeney against eight separate victims. These incidents included several rapes, including one at knife point and various other sexual assaults. All of the victims were young, teenage girls.
¶ 10 The jury determined that Mr. Keeney was a SVP and he was civilly committed by the trial court. This appeal timely followed.

ANALYSIS

Constitutionality of Chapter 71.09 RCW
¶ 11 This court reviews the constitutionality of a statute de novo. See State v. Watson, 160 Wash.2d 1, 4, 154 P.3d 909 (2007) (quoting Kitsap County v. Mattress Outlet, 153 Wash.2d 506, 509, 104 P.3d 1280 (2005)). And we presume that statutes are *855 constitutional. State v. Glas, 147 Wash.2d 410, 422, 54 P.3d 147 (2002).
¶ 12 Constitutional protections of due process require that statutes provide fair notice of the proscribed conduct. See Watson, 160 Wash.2d at 6, 154 P.3d 909. A statute does not provide fair notice if it is phrased in terms that are so vague that an individual of common intelligence must necessarily guess at its meaning. Id. at 7, 154 P.3d 909 (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). Due process concerns regarding vagueness also address the need to prevent arbitrary or discriminatory enforcement of the law. Glas, 147 Wash.2d at 421-22, 54 P.3d 147 (quoting City of Tacoma v. Luvene, 118 Wash.2d 826, 844, 827 P.2d 1374 (1992)).
¶ 13 Here, Mr. Keeney asserts that Washington's SVP statute is unconstitutionally vague. Specifically, he asserts the statute fails to define the relevant time period that the fact finder is to use when assessing whether a defendant is likely to engage in predatory acts of sexual violence. According to Mr. Keeney, because the likelihood of reoffense changes over time, the lack of a defined time frame poses a danger of arbitrary determinations of SVP status.
¶ 14 In order to find that the statute at issue is unconstitutionally vague, this court must find either that the statute does not define the offense with sufficient definiteness so that ordinary people can understand what conduct is proscribed, or that the statute does not provide ascertainable standards in order to prevent arbitrary enforcement. State v. Williams, 144 Wash.2d 197, 203, 26 P.3d 890 (2001) (quoting City of Bellevue v. Lorang, 140 Wash.2d 19, 30, 992 P.2d 496 (2000)).
¶ 15 But mere uncertainty is insufficient to establish that a statute is unconstitutionally vague. Watson, 160 Wash.2d at 8, 154 P.3d 909 (quoting City of Spokane v. Douglass, 115 Wash.2d 171, 179, 795 P.2d 693 (1990)). This court will not invalidate a statute merely because it could have been drafted more precisely. State v. Sullivan, 143 Wash.2d 162, 184, 19 P.3d 1012 (2001).
¶ 16 In order to find that an individual is a SVP, the State must show beyond a reasonable doubt that the person has been convicted, or charged with, a crime of sexual violence. In re Det. of Stout, 159 Wash.2d 357, 365, 150 P.3d 86 (2007). The State must also show that the individual suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility. Id. The phrase "[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility" is defined by RCW 71.09.020(7).
¶ 17 The Washington Supreme Court has already considered, and rejected, a general claim that the word "likely" in the SVP statute is unconstitutionally vague. In re Pers. Restraint of Young, 122 Wash.2d 1, 49, 857 P.2d 989 (1993). In the context of the SVP statute, the court has noted that, "[a]lthough predictions of future dangerousness are certainly less than perfect, this court has previously decided that predictions of dangerousness do not violate due process." Id. at 32 n. 8, 857 P.2d 989. The court also concluded that the terms in the SVP statute were not so vague that the SVP statute denies due process. Id. at 50, 857 P.2d 989. Moreover, other procedural safeguards and the heavy burden of proof on the State also mitigate any uncertainty in predictions of future dangerousness. See In re Det. of Thorell, 149 Wash.2d 724, 755, 72 P.3d 708 (2003).
¶ 18 While it is unclear whether the court in Young had considered the particular question raised by Mr. Keeney, numerous other jurisdictions have rejected any requirement that a certain time frame be implied regarding the likelihood of the defendant to engage in acts of sexual violence. See, e.g., Martin v. Reinstein, 195 Ariz. 293, 317-18, 987 P.2d 779 (1999); Hubbart v. Superior Court, 19 Cal.4th 1138, 1163-64, 81 Cal.Rptr.2d 492, 969 P.2d 584 (1999); In re Det. of Hayes, 321 Ill.App.3d 178, 187-88, 254 Ill.Dec. 404, 747 N.E.2d 444 (2001) ("substantially probable" standard not unconstitutionally vague); Commonwealth v. Boucher, 438 Mass. 274, 276-77, 780 N.E.2d 47 (2002); In re Commitment of W.Z., 339 N.J.Super. 549, 572, 773 A.2d 97 (2001), aff'd, 173 N.J. 109, 801 A.2d 205 *856 (2002); State v. Post, 197 Wis.2d 279, 541 N.W.2d 115 (1995). Other courts have found that, while inconsistent conclusions as to the likelihood of future dangerousness may be reached based on application of the same statute, this does not render that statute unconstitutional. See, e.g., Westerheide v. State, 767 So.2d 637, 654, 831 So.2d 93 (Fla. Dist.Ct.App.2000).
¶ 19 Moreover, useful analogies are found in the related contexts of capital punishment and involuntary commitment due to a mental disorder. Both of these areas sometimes rely on future dangerousness as a factor to consider. And in both of these areas, Washington has rejected similar due process challenges.
¶ 20 The United States Supreme Court considered, and rejected, a vagueness challenge to future dangerousness as an aggravating factor in the context of capital punishment. The statute at issue required a finding that there was a probability that the defendant would commit future acts of violence in order to impose the death penalty. Jurek v. Texas, 428 U.S. 262, 269, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The defendant asserted that "it is impossible to predict future behavior and that the question is so vague as to be meaningless." Id. at 274, 96 S.Ct. 2950. The court disagreed and concluded that the difficulty of predicting future behavior was not sufficient to constitute a due process violation. Id. at 274-75, 96 S.Ct. 2950.
¶ 21 In the context of involuntary civil detention of mentally disordered persons, the Washington Supreme Court also addressed vagueness concerns regarding the difficulty in predicting future dangerousness. See In re Harris, 98 Wash.2d 276, 654 P.2d 109 (1982). The civil commitment statute in that case allowed the detention of mentally disordered persons, provided that a qualified mental health professional determined that the individual "`presents a likelihood of serious harm to others or himself.'" Id. at 278-79, 654 P.2d 109 (quoting former RCW 71.05.150(1)(a) (1979)).
¶ 22 The court concluded that determinations of future dangerousness were constitutionally permissible and did not violate due process. Harris, 98 Wash.2d at 280-81, 654 P.2d 109. The court also rejected any requirement that the potential for future harm must be shown to be imminent. Id. at 282-83, 654 P.2d 109. Such a requirement was deemed impracticable and contrary to the purposes of the legislation permitting civil commitment. Id. at 284, 654 P.2d 109. Accordingly, there was no implicit time period during which the State was required to show future dangerousness. Id. at 284-85, 654 P.2d 109.
¶ 23 While there may be a degree of uncertainty in predictions of future violence under RCW 71.09.020(7), this uncertainty does not rise to the level of unconstitutional vagueness. Moreover, any lack of definiteness is mitigated by other procedural protections that are attendant to SVP hearings, as well as the State's burden of proof beyond a reasonable doubt. Fact finders are not required to consider any particular time frame when making the determination. Therefore, the phrase, "likely to engage in predatory acts of sexual violence," is not unconstitutionally vague.
Right to a Unanimous Verdict
¶ 24 An alleged violation of the right to a unanimous jury verdict is a constitutional challenge that this court reviews de novo. See State v. Jones, 159 Wash.2d 231, 237, 149 P.3d 636 (2006), cert. denied, ___ U.S. ___, 127 S.Ct. 2066, 167 L.Ed.2d 790 (2007).
¶ 25 Every criminal defendant has the constitutional right to a unanimous verdict of guilt determined by a jury of his or her peers. See, e.g., State v. Smith, 159 Wash.2d 778, 783, 154 P.3d 873 (2007). The right to a unanimous jury verdict includes the right to unanimity as to the means by which the defendant committed the crime. State v. Spencer, 128 Wash.App. 132, 141, 114 P.3d 1222 (2005) (quoting State v. Klimes, 117 Wash.App. 758, 770, 73 P.3d 416 (2003), overruled in part by State v. Allen, 127 Wash.App. 125, 110 P.3d 849 (2005)). This constitutional requirement also demands unanimous jury findings on all of the elements of the charged offense. See State v. *857 Coleman, 159 Wash.2d 509, 515, 150 P.3d 1126 (2007).
¶ 26 The right to a unanimous jury verdict applies to SVP civil commitment hearings. See Young, 122 Wash.2d at 48, 857 P.2d 989. This court also applies principles regarding the right to a unanimous jury verdict in criminal proceedings to SVP civil commitment hearings. In re Det. of Halgren, 156 Wash.2d 795, 809, 132 P.3d 714 (2006).
¶ 27 Mr. Keeney asserts that the lack of a definition of the period of time a jury can consider in making this determination allows the jury to make a non-unanimous determination on confinement. This assertion is in error.
¶ 28 First, as previously noted, there is no specific length of time that is required in making the determination of future dangerousness. As such, it cannot be an element of the offense that must be determined unanimously.
¶ 29 Second, even assuming that a specific time period was required, the length of time required would be part of the definition of "likely to engage in predatory acts of sexual violence." And the definition of an element of an offense does not create alternative means of committing an offense that could threaten jury unanimity. See Smith, 159 Wash.2d at 785, 154 P.3d 873; State v. Winings, 126 Wash.App. 75, 89-90, 107 P.3d 141 (2005).
¶ 30 Mr. Keeney's right to a unanimous jury verdict was not violated.
Jurisdiction
¶ 31 Mr. Keeney asserts that the unlawfulness of his detention stripped the trial court of jurisdiction to hear his subsequent SVP commitment hearing. An individual convicted of a sex offense may only receive community custody in lieu of earned early release. See RCW 9.94A.728(2)(a). In order to qualify for transfer to community custody, the inmate is required to propose a release plan that includes an approved residence and living arrangement. Approval by the DOC must be sought prior to release into the community. RCW 9.94A.728(2)(c). The DOC has discretion to transfer the inmate to community custody status. But the DOC also may reject the inmate's proposed release plan if the plan places the offender at risk to reoffend or presents a risk to the victim or community safety. RCW 9.94A.728(2)(d).
¶ 32 Here, the DOC rejected Mr. Keeney's proposed release plan because it had referred his case to the Walla Walla County prosecutor for a civil commitment hearing. As a result, the DOC did not examine Mr. Keeney's specific proposal and evaluate the proposed release plan on its merits. Mr. Keeney claims that this rendered his subsequent incarceration unlawful. He relies on two cases to support his contention that his detention was unlawful: In re Personal Restraint of Liptrap, 127 Wash.App. 463, 111 P.3d 1227 (2005) and In re Personal Restraint of Dutcher, 114 Wash.App. 755, 60 P.3d 635 (2002).
¶ 33 The issue in Liptrap was markedly different than the one to be determined by this court. The court's ruling in Liptrap was that the DOC was required to act on proposed release plans in a timely fashion. Liptrap, 127 Wash.App. at 476, 111 P.3d 1227. Here, the DOC did not delay its consideration of Mr. Keeney's proposed release plan. The proposed plan was timely considered and rejected. Therefore, the decision in Liptrap is inapposite to this case.
¶ 34 But Dutcher is instructive here. In Dutcher, the DOC established a policy of automatic denial of community custody plans for those inmates who were referred for a SVP civil commitment hearing. Dutcher, 114 Wash.App. at 760, 60 P.3d 635. The court in Dutcher concluded that the earned early release statute required the DOC to consider an inmate's proposed release plan and base its decision on the merits of that plan. Id. at 762, 60 P.3d 635. The detention of Mr. Dutcher was determined to be unlawful. Id. at 766, 60 P.3d 635.
¶ 35 However, unlike the inmate in Dutcher, Mr. Keeney is no longer in a position where this court can afford him any relief. The correct remedy for this particular violation is to allow the inmate to submit a community custody plan to the DOC for investigation. Id. Since Mr. Keeney has already *858 served the full length of his sentence, this remedy is no longer available. In the absence of any effective remedy that can be provided by this court, Mr. Keeney's due process issue is moot. See, e.g., In re Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983).
¶ 36 Moreover, there is no precedent in Washington that an unlawful detention of an inmate removes jurisdiction and precludes the State from obtaining subsequent civil commitment of that individual as a SVP.
¶ 37 A review of the holdings of other jurisdictions on this issue reveals a minor split of authority. Some courts have rejected a requirement that the individual be in lawful custody in order for the court to obtain proper jurisdiction for a sexual predator commitment hearing. See, e.g., People v. Hubbart, 88 Cal.App.4th 1202, 1228-29, 106 Cal. Rptr.2d 490 (2001); People v. Jackson, 37 Ill.2d 379, 383-84, 227 N.E.2d 366 (1967) (concluding that inmates may be detained for a reasonable time after the end of their sentence pending a sexually-dangerous person determination); In re Kenney, 66 Mass. App.Ct. 709, 713-14, 850 N.E.2d 590, review denied, 447 Mass. 1110, 854 N.E.2d 441 (2006). In the absence of evidence of intentional wrongdoing, unlawful detention of the defendant does not strip the court of jurisdiction. Hubbart, 88 Cal.App.4th at 1228-29, 106 Cal.Rptr.2d 490; Kenney, 66 Mass.App. Ct. at 713-14, 850 N.E.2d 590.
¶ 38 These cases focus on the absence of an explicit requirement of lawful custody in the statutes authorizing civil commitment of sexual predators and the numerous procedural safeguards that are attendant to these civil commitment hearings, See Hubbart, 88 Cal.App.4th at 1228-29, 106 Cal.Rptr.2d 490. These cases also look to whether stripping the courts of jurisdiction would further the legislative intent of these civil commitment statutes. Kenney, 66 Mass.App.Ct. at 713-14, 850 N.E.2d 590.
¶ 39 One Florida decision has concluded that lawful custody is a jurisdictional requirement in order for the state to petition for the civil commitment of an incarcerated person. See State v. Atkinson, 831 So.2d 172 (Fla. 2002). But the decision in Atkinson was, in part, predicated on issues of retroactivity and the fact that there was no procedural mechanism to seek civil commitment in cases where the defendant was not in custody. See Tanguay v. State, 880 So.2d 533, 537 (Fla.2004). Because of subsequent amendments to the sexual predator civil commitment statutes, the Florida Supreme Court has since held that unlawful detention does not strip the court of jurisdiction, but any evidence obtained during the unlawful detention may not be used. Id. Therefore, the overwhelming weight of persuasive authority rejects the premise that the unlawful detention of a defendant strips a court of jurisdiction in civil commitment cases.
¶ 40 The SVP statute merely requires that an individual be in custody at the time of the commitment hearing. See RCW 71.09.030, .040. Moreover, there are sufficient procedural protections that mitigate any risk of erroneous deprivation of an inmate's liberty in SVP commitment proceedings. These protections include the requirement that the State show probable cause to maintain a SVP petition, the right to a jury trial, the requirement of proof beyond a reasonable doubt, the right to cross-examine witnesses, and the right to periodic review upon civil commitment as a SVP. See RCW 71.09.060; Stout, 159 Wash.2d at 370-71, 150 P.3d 86; Young, 122 Wash.2d at 39, 857 P.2d 989.
¶ 41 A review of the legislative intent of the SVP statute also supports the conclusion that unlawful detention does not strip the court of jurisdiction in SVP civil commitment proceedings. The special provisions of the SVP statute are intended to address the high likelihood that these offenders will engage in sexually violent behavior upon being released unconditionally into the public. See RCW 71.09.010. It is this heightened risk of reoffense that underlies the existence of special civil commitment procedures for a SVP. RCW 71.09.010. Consequently, stripping the courts of jurisdiction in such cases, in absence of a showing of bad faith, would not further the legislative intent of the SVP statute.
¶ 42 "Lawful custody" is not a jurisdictional prerequisite to a valid petition for civil commitment as a SVP. An individual is not *859 precluded from pursuing remedies for an unlawful detention. But the question of the lawfulness of an individual's detention is a separate question, involving separate proceedings, and is not included in the inquiry as to whether an individual meets the criteria for civil commitment as a SVP.
¶ 43 We affirm.
WE CONCUR: SWEENEY, C.J., and BROWN, J.
NOTES
[1] Mr. Keeney also submitted to the court several questionnaires that were sent out to 125 individuals who were picked by him at random. Mr. Keeney asserted the answers to these questionnaires demonstrated that the SVP statute was vague as to the relevant time period to be considered for the risk of reoffense. The trial court refused to consider these questionnaires and ordered Mr. Keeney's counsel to cease and desist mailing out these questionnaires. Mr. Keeney does not challenge the trial court's ruling excluding these questionnaires.