COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 JUL 28 AM 9: 16



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 70129-1-I |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| KEVIN MAGERA | ) | FILED: July 28, 2014 |
| | ) | |

VERELLEN, A.C.J. — Kevin Magera appeals from the trial court's order authorizing his commitment as a sexually violent predator (SVP) pursuant to chapter 71.09 RCW. He first contends that the State committed misconduct in its closing argument. His arguments are unavailing because the State's closing arguments were not improper and were supported by the record. Magera next contends that his right to a unanimous jury verdict was violated. This argument is meritless because the jury was not required to unanimously agree as to the specific diagnoses that satisfied the statutory elements. Accordingly, we affirm.

## FACTS

In 2000, Magera was convicted of one count of rape of a child in the first degree and two counts of child molestation in the first degree. The State filed an SVP petition shortly before Magera's scheduled release. To establish that Magera was an SVP, the State had to prove the following elements beyond a reasonable doubt: (1) Magera had been convicted of or charged with a crime of sexual violence;

(2) Magera suffered from a mental abnormality or personality disorder; and (3) the mental abnormality or personality disorder made Magera likely to engage in predatory acts of sexual violence if not confined in a secure facility.[1]

At the commitment trial, Dr. John Hupka, a licensed psychologist, testified on behalf of the State. He had reviewed Magera's treatment records, psychological and psychiatric evaluations, police reports, victim statements, and numerous other records. Hupka also interviewed Magera twice. Based on his evaluations, Dr. Hupka diagnosed Magera with pedophilia, a mental abnormality characterized by intense recurrent sexual fantasies and urges or sexual behaviors involving prepubescent children. Hupka also diagnosed Magera with a personality disorder of a mixed type, having both antisocial and narcissistic characteristics, that complicates his pedophilia. But Hupka testified that Magera's personality disorder alone did not predispose him to commit criminal sexual acts. Instead, Hupka concluded that Magera's pedophilia, individually and together with his personality disorder, undermined his ability to control his behavior. Based on actuarial risk assessment measures and static and dynamic risk factors, Hupka concluded that Magera was likely to commit new predatory sexual offenses.

---

[1] RCW 71.09.020(18); In re Det. of Audett, 158 Wn.2d 712, 727, 147 P.3d 982 (2006) (quoting In re Det. of Thorell, 149 Wn.2d 724, 758-59, 72 P.3d 708 (2003)). A "mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(8).

2

A jury found that Magera was an SVP. As a result, the trial court committed Magera to a secure facility until such time as his mental abnormality has been modified to the point where he would be safe at large. Magera appeals.

## DISCUSSION

Magera first argues that the prosecutor committed two instances of misconduct during closing argument that require reversal of his commitment order. We disagree.

To prevail on this claim, Magera must show that the prosecutor's conduct was both improper and prejudicial.[2] We consider the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions.[3] To establish prejudice, Magera must show a substantial likelihood that the misconduct affected the jury verdict.[4] Because Magera failed to object, we will not review the alleged error unless the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice.[5]

Magera argues that the prosecutor improperly urged the jury to civilly commit him in order to hold him accountable for his earlier crimes by stating, "We need to see Mr. Magera taking accountability for his actions. Pleading guilty and avoiding trial is not taking accountability."[6] Magera is correct that a prosecutor commits

---

[2] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 717, 286 P.3d 673 (2012).

[3] State v. Anderson, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009).

[4] Glassman, 175 Wn.2d at 717.

[5] Id.

[6] Report of Proceedings (RP) (March 6 & 7, 2013) at 17.

misconduct by arguing that civil commitment "should be invoked to impose further punishment."[7] But here, the prosecutor did not make such an argument. Instead, the prosecutor made this statement in the context of arguing that Magera failed to accept responsibility for his offenses, acknowledge his risk factors, and truly incorporate the information learned in treatment to reduce his risk of recidivism. Taken in context, the prosecutor's argument suggests that Magera lacks insight into his offending behavior and that, as a result, there is a strong likelihood that he will reoffend if released. Such an argument is supported by the evidence presented at trial. "[I]n a sexual predator commitment proceeding, the prosecutor is entitled to argue that a respondent's future dangerousness prevents placement in a less restrictive setting than secure confinement."[8] The prosecutor's argument was not improper.

Magera also argues that the prosecutor's rebuttal argument caused the jury to improperly base its decision on passion and prejudice. In an effort to explain Magera's mental abnormality, the prosecutor juxtaposed a normal reaction to a young child—caring and kindness—with Magera's reaction to a young child—arousal.[9] The comments by the prosecutor were either based on evidence in the

---

[7] In re Det. of Gaff, 90 Wn. App. 834, 842, 954 P.2d 943 (1998).

[8] Id.

[9] The prosecutor argued, "You imagine a [k]indergartner, a five or six-year-old. You see a little person who's innocent, bushy tailed, wide eyed, dwarfed by the fifth and sixth graders that go to the same elementary school. You feel the need, the desire, to protect this little child, to nurture them, to shield them from bad things. You talk to a [k]indergartner about their favorite Disney princess or their latest Lego creation. That's what you do. Mr. Magera sees a [k]indergartner and sees a potential sexual partner. Mr. Magera sees a [k]indergartner and feels sexual urges. He gets aroused. He gets and maintains an erection. Mr. Magera talks to a [k]indergartner about fun-fun and it being our little secret, because if other people found out, they

record and before the jury or they were fair inferences from that evidence.[10] In closing argument, the prosecutor has wide latitude in making arguments and drawing reasonable inferences from the evidence.[11] The prosecutor's argument was not improper. Furthermore, the type of rhetoric used in the prosecutor's closing argument here did not approach the egregious conduct of the prosecution in the cases relied upon by Magera.[12] Any arguably improper comments were not so egregious as to engender incurable prejudice. Magera's claims of prosecutorial misconduct fail.

Magera next contends he was denied the right to a unanimous jury verdict. Specifically, Magera argues that where the State presents evidence of multiple diagnoses to support its claim that the respondent suffers from a mental abnormality, the jury is required to unanimously agree as to which specific mental abnormality makes the respondent an SVP. We disagree.

---

wouldn't understand. Five and six-year-olds gave him an erection. Ladies and gentlemen, that is not a normal response." RP (Mar. 6 & 7, 2013) at 55-56.

[10] For example, Dr. Hupka testified that Magera's pedophilia "impairs his emotional capacity. . . . The normal response to children is one of caretaking . . . . Sexual arousal and sexual desire and wanting to rape children is not a normal part of emotional experience." RP (Mar. 1 & 4, 2013) at 137-38.

[11] State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

[12] See State v. Belgarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988) (reversing convictions where the prosecutor argued extensively that the defendant was affiliated with a terrorist organization whose members were militant "butchers, that killed indiscriminately"); State v. Pierce, 169 Wn. App. 533, 556, 280 P.3d 1158 (2012) (reversing convictions where the prosecutor "argued outside the evidence about what [the defendant's] thoughts were before the crime, invited the jury to relive the horror of the murders by fabricating a heart-wrenching story about how the murders occurred, and invited the jury to imagine the crimes happening to themselves").

The right to a unanimous jury verdict applies in SVP civil commitment hearings.[13] Moreover, the principles regarding the right to unanimous jury verdicts in criminal proceedings apply equally in SVP civil commitment hearings.[14] One such principle is the rule that where there is more than one statutory alternative means of committing an offense, the alternative means test generally requires that the jury unanimously agree on one of the alternative means.[15] Proof that a respondent suffers from a "mental abnormality" or proof that a respondent suffers from a "personality disorder" constitute the two distinct means of establishing the mental illness element of the SVP determination.[16] But "the alternative means analysis does not apply to circumstances involving 'means within a means.'"[17] "[T]he actual diagnosed mental abnormalities or personality disorders are not the alternative means which the State must prove beyond a reasonable doubt; it is whether the person suffers from a mental abnormality or a personality disorder."[18]

Here, the State presented evidence that Magera suffered from both pedophilia and a personality disorder not otherwise specified, which complicated his pedophilia. But the State clarified that Magera's personality disorder alone did not satisfy the

---

[13] RCW 71.09.060(1); In re Det. of Keeney, 141 Wn. App. 318, 327, 169 P.3d 852 (2007).

[14] In re Det. of Halgren, 156 Wn.2d 795, 809-11, 132 P.3d 714 (2006).

[15] Id. at 809 (citing State v. Arndt, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976)).

[16] Id. at 811; see RCW 71.09.020(16).

[17] In re Det. of Pouncy, 144 Wn. App. 609, 618, 184 P.3d 651 (2008) (quoting State v. Al-Hamdani, 109 Wn. App. 599, 604, 36 P.3d 1103 (2001)), aff'd, 168 Wn.2d 382 (2010); see In re the Pers. Restraint of Jeffries, 110 Wn.2d 326, 752 P.2d 1338 (1988).

[18] In re Det. of Sease, 149 Wn. App. 66, 76-77, 201 P.3d 1078 (2009).

statutory requirements for finding that Magera was an SVP. Indeed, because Magera was not alleged to have a qualifying personality disorder, the jury instructions eliminated this option. Instead, the jury was instructed only that the State must prove that Magera "suffers from a mental abnormality which causes serious difficulty in controlling his sexually violent behavior."[19] The jury was not required to unanimously decide whether Magera had a mental abnormality as a result of his pedophilia alone or in combination with his personality disorder not otherwise specified, which complicated his pedophilia.[20] Instead, the jury need only have unanimously found that the State proved that Magera suffered from a mental abnormality that made it more likely that he would engage in acts of sexual violence if not confined to a secure facility. It did so. Accordingly, no unanimity instruction was required and Magera's claim is unavailing.

As part of the same argument, Magera contends that the trial court erroneously rejected his proposed jury instructions. We review the adequacy of the jury instructions de novo "in the context of the instructions as a whole."[21] Magera's proposed instructions would have required the jury to reach unanimous agreement as to whether Magera suffered from "a mental abnormality, to wit: pedophilia."[22] In

---

[19] Clerk's Papers at 14.

[20] "[T]hese two means of establishing that a person is an SVP [—mental abnormality or personality disorder—] may operate independently or may work in conjunction. Thus, because an SVP may suffer from both defects simultaneously, the mental illnesses are not repugnant to each other and may inhere in the same transaction." Halgren, 156 Wn.2d at 810.

[21] State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 425 (1995).

[22] Clerk's Papers at 568.

declining to give the proposed instructions, the trial court concluded that it would likely be a comment on the evidence to limit the alleged mental abnormality to pedophilia alone and that such instructions were unnecessary because there were not multiple diagnoses that would make the pattern jury instructions confusing. For these and the reasons discussed above, Magera's proposed jury instructions were properly refused.

We affirm the trial court's order authorizing Magera's commitment as an SVP.

WE CONCUR:

_Verellen, A.C.J._

_Appelwick, J._

_Becker, J._