IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| In the Matter of the Personal Restraint of: | No. 88038-1-I |
| SHANE AMMEL LYNN | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

HAZELRIGG, C.J. — By personal restraint petition, Shane Lynn seeks relief from his convictions on multiple felony charges following a bench trial. Lynn avers there was insufficient evidence to support his convictions, that the "any force or means" clause of the assault in the first degree statute, RCW 9A.36.011, is unconstitutionally vague, and the amended information was constitutionally deficient. Lynn fails to carry his burden as to any of his challenges, and we deny his petition.

FACTS

After a bench trial in 2019, Lynn was found guilty of assault in the first degree, possession of a stolen motor vehicle, and attempting to elude a pursuing police vehicle with a special enhancement of endangerment.[1] His direct appeal from that judgment and sentence (J&S) was filed in Division Two of this court and later transferred to this division. A panel of this court affirmed his convictions in an unpublished opinion after analyzing assignments of error regarding shackling at trial, the admission of opinion testimony, the sufficiency of the evidence underlying his

---

[1] These were counts 1, 3, and 4, respectively, in the first amended information filed by the State on October 25, 2019. Lynn was acquitted of count 2, assault in the second degree.

convictions, and a number of claims presented in a pro se statement of additional grounds for review (SAG). *State v. Lynn*, No. 82543-7-I, slip op. (Wash. Ct. App. Oct. 25, 2021) (*Lynn* I) (unpublished), https://www.courts.wa.gov/opinions/pdf/825437.pdf, *review denied,* 199 Wn.2d 1003 (2022).[2] However, this court remanded for the trial court to strike the portion of his J&S that imposed interest on his legal financial obligations. *Id.* at 13.

Lynn now presents this personal restraint petition (PRP) and again challenges the sufficiency of the evidence supporting his convictions. He further alleges, for the first time, that RCW 9A.56.011(1)(a) is unconstitutionally vague as applied to him and the charging instrument was constitutionally deficient. The relevant facts were set out in Lynn's direct appeal as follows:

> On June 28, 2018, Shane Lynn was sitting in a stolen pick-up truck outside someone else's home. A patrol vehicle approached, flashing its overhead lights. Lynn sped away, first crashing into a carport and then a fence before continuing on. He was pursued by two Mason County Sheriff officers in two separate cars, Sergeant Kelly LaFrance and Deputy Nathan Anderson. Sergeant LaFrance and Deputy Anderson followed Lynn at a distance of about 50 feet, going 70 to 80 miles per hour. While they pursued him, Lynn was swerving through lanes of traffic and threw at least one paint can and two metal 12 to 14 inch propane canisters behind him at Sergeant LaFrance. The propane canisters hit the ground, bounced, and exploded in a burst of smoke that Sergeant LaFrance and Deputy Anderson had to drive through. As the chase continued, Lynn also fired two rounds from a flare gun at Sergeant LaFrance.
> The State charged Lynn with second degree assault, possession of a stolen motor vehicle, attempting to elude a police vehicle, and unlawful possession of a firearm. Lynn waived his right to a jury trial. The State then amended the information to drop the firearm charge and add a first degree assault charge, and the case proceeded to a bench trial.

---

[2] Under GR 14.1, we may cite to unpublished opinions as necessary for well-reasoned opinions. We cite to the unpublished opinions issued in Lynn's direct appeal and prior collateral attack to establish both the procedural history of the instant case and the relevant facts underlying his convictions.

*Id.* at 2. At the conclusion of the bench trial, the judge found Lynn guilty as to three of the four counts and acquitted him of the assault in the second degree charge. The State prepared findings of fact and conclusions of law (FFCL) that the judge entered after adding a handwritten notation that their oral findings were incorporated by reference. The Supreme Court denied Lynn's petition for review of his direct appeal. *See State v. Lynn*, 199 Wn.2d 1003 (2022).

In May 2022, Lynn filed a pro se CrR 7.8(b) motion in Mason County Superior Court, by which he sought appointment of counsel under CrR 3.1 and, ultimately, relief from judgment. His motion alleged that the charging instrument was defective because "count I . . . was missing the 'essential element[]' of the 'identity' of the deadly weapon, and therefore, he did not have adequate notice to prepare a defense." *State v. Lynn,* No. 57342-3-II, slip op. at 3 (Wash. Ct. App. Sept. 19, 2023) (*Lynn* II) (one alteration in original) (internal quotation marks omitted) (unpublished), https://www. courts.wa.gov/opinions/pdf/D2%2057342-3-II%20Unpublished%20Opinion.pdf, *review denied*, 2 Wn.2d 1020 (2024). The trial court held a hearing on Lynn's motion but ultimately denied it, and when the court asked Lynn if he wanted to pursue the matter further as a PRP, he agreed. *Id.* at 3. Lynn next filed a motion for reconsideration of the court's ruling on his CrR 7.8 motion and argued that it should *not* be transferred as a PRP because it was timely. *Id.* at 4. The trial court denied reconsideration and again asked if Lynn would like his CrR 7.8 motion transferred as a PRP, which he declined. *Id.* Lynn appealed the denial of the motion, and Division Two of this court issued an unpublished opinion in March 2024 that remanded the matter to the trial court with a directive to transfer it back to the Court of Appeals as a PRP. *See id.* at

11. Lynn again petitioned for review to the Supreme Court and was again denied. *See State v. Lynn*, 2 Wn.3d 1020 (2024).

On April 26, 2024, Mason County Superior Court transferred Lynn's CrR 7.8 motion to the Court of Appeals as a PRP consistent with the directive of the opinion in *Lynn* II. On May 21, Lynn's current counsel entered a notice of appearance in this case and also filed a motion to file an amended petition "in order to fully present all nonfrivolous claims for relief to this [c]ourt and prevent subsequent petitions." A commissioner granted the motion but cited RAP 16.8(e) and noted that "any new grounds raised in the petition may be subject to the time bar in RCW 10.73.090." Division Two referred the PRP to a panel for decision on September 20 and later ordered the case transferred to this division on April 17, 2025.

ANALYSIS

I.      Legal Framework for Personal Restraint Petitions

Title 16 RAP governs PRPs generally. RAP 16.8.1 requires preliminary review of each petition, and RAP 16.11 establishes that this initial screening is to be conducted by the Chief Judge or Acting Chief Judge of the division where the petition is filed. RAP 16.8.1(b) mandates dismissal of the PRP "without requesting a response if it is clearly frivolous or clearly barred by RCW 10.73.090 or RAP 16.4(d)."

A person subject to unlawful restraint may request relief by filing a PRP. RAP 16.4(a). RAP 16.4(b) provides, in part, that a "petitioner is under 'restraint' if the petitioner has limited freedom because" they are confined. RAP 16.4(c) furnishes a non-exclusive list of reasons that restraint could be unlawful, including that the conviction was obtained "in violation of the Constitution of the United States or the

- 4 -

Constitution or laws of the State of Washington." RAP 16.4(c)(2). However, there are restrictions on the relief available pursuant to a PRP; we will only grant relief "if other remedies which may be available to the petitioner are inadequate under the circumstances and if such relief may be granted under RCW 10.73.090, or .100." RAP 16.4(d).

The petitioner must bring their collateral attack on the J&S no "more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). RCW 10.73.100 provides several exceptions to the .090 time bar. Two of those exceptions are relevant to Lynn's petition: subsection (2), "[t]he statute that the defendant was convicted of violating was unconstitutional on its face or as applied to the defendant's conduct," and subsection (4), "[t]he defendant pleaded not guilty and the evidence introduced at trial was insufficient to support the conviction." RCW 10.73.100.

A petitioner may raise "[b]oth constitutional and nonconstitutional errors" in a PRP. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). "To obtain relief on collateral review based on constitutional error, the petitioner must demonstrate by a preponderance of the evidence that [they were] actually and substantially prejudiced by the error." *In re Pers. Restraint of Morris*, 189 Wn. App. 484, 490-91, 355 P.3d 355 (2015). For relief following an "alleged nonconstitutional error, [they] must show a fundamental defect resulting in a complete miscarriage of justice." *Elmore*, 162 Wn.2d at 251.

II.    Bar on Relitigation

"Our review of these petitions is constrained, and relief granted through collateral challenges is 'extraordinary.'" *In re Pers. Restraint of Fero,* 190 Wn.2d 1, 14, 409 P.3d 214 (2018) (plurality opinion) (quoting *In re Pers. Restraint of Coats,* 173 Wn.2d 123 132, 267 P.3d 324 (2011)).  A collateral attack on a conviction through a PRP "must raise new points of fact and law that *were not or could not have been raised* in the principal action." *In re Pers. Restraint of Becker,* 143 Wn.2d 491, 496, 20 P.3d 409 (2001) (emphasis added).  If the petitioner has already fully litigated a challenge on direct appeal, they cannot renew the claim "unless we determine that the interests of justice require relitigation of this issue." *In re Pers. Restraint of Knight,* 196 Wn.2d 330, 341, 473 P.3d 663 (2020).  "'The interests of justice are served by reconsidering a ground for relief if there has been an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application.'" *Id.* (internal quotation marks omitted) (quoting *In re Pers. Restraint of Yates,* 177 Wn.2d 1, 17, 296 P.3d 872 (2013)).  "A petitioner who renews an issue may not merely present different factual allegations or raise different legal arguments." *In re Pers. Restraint of Mines,* 190 Wn. App. 554, 562, 364 P.3d 121 (2015).

Lynn attempts to overcome the bar on relitigation by framing his current challenge as an attack on the findings of fact, asserting that this makes his collateral attack distinct from his direct appeal where he previously challenged the sufficiency of the evidence or, alternatively, that consideration of this issue is required by the interests of justice.  Lynn offers three reasons that he believes establish that the interests of justice overcome the bar on relitigation: his original appellate counsel

failed to satisfactorily develop an argument in briefing during Lynn's direct appeal, the panel that decided his direct appeal erred when it concluded Lynn's intent could be inferred from his actions, and his own SAG failed to adequately develop his argument regarding the use of the propane tanks as a deadly weapon. Lynn also separately attacks the sufficiency of the evidence for the special enhancement of endangerment on the attempting to elude conviction for the first time in this petition.

Lynn's PRP alleges the same errors that we previously considered in his direct appeal and thus we reject his collateral attack as an impermissible attempt to relitigate an issue previously decided on direct review. This includes his claim that the special enhancement of endangerment was not supported by sufficient evidence, as this is a permutation of the previous assignment of error. In deciding his sufficiency challenge on direct appeal, this court expressly noted the following:

> Through counsel and in his SAG, Lynn contends that there was insufficient evidence to support the court's finding that he intended to inflict great bodily harm. In his SAG, Lynn also contends that there was insufficient evidence that the propane tank was a deadly weapon. We disagree.

*Lynn* I, slip op. at 8. The *Lynn* I panel then reviewed the relevant evidence before concluding that it supported the trial court's finding of intent to inflict great bodily harm and Lynn's conduct created a risk of a collision at high speeds that would seriously injure pursuing officers. *Id.* at 10-11.

Critically, Lynn offers no compelling reason why the interests of justice require deviation from the bar on relitigation. First, Lynn cannot appeal to the interests of justice for what effectively amounts to a claim of ineffective assistance of appellate counsel (IAC); the time to present such a claim has passed and repackaging Lynn's

challenge within the IAC framework does not entitle Lynn to relief.[3]  *See In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004) ("'[A] defendant may not recast the same issue as an ineffective assistance claim; simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previous rejected claim.'" (quoting *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001))).  Petitions asserting a claim of ineffective assistance of counsel are subject to the time bar set out in RCW 10.73.090.  *See In re Pers. Restraint of Tricomo*, 13 Wn. App. 2d 223, 241-42, 463 P.3d 760 (2020).  Nonetheless, as his primary justification for relitigation, Lynn explicitly asserts that his prior "appellate counsel's argument challenging the findings of specific intent failed to adequately explain . . . how Sergeant LaFrance's apprehension was irrelevant to [Lynn's] *mens rea*."  However, Lynn's current counsel also acknowledged that any IAC claim would be time barred and expressly noted in the amended petition that raising it at that stage of the proceeding would risk dismissal of the current action as a mixed petition.[4]  *See In re Pers. Restraint of Hankerson*, 149 Wn.2d 695, 703-04, 72 P.3d 703 (2003).  Counsel's contention in briefing that, simply put, he would

_____

[3] At oral argument before this court, Lynn asserted that prior appellate counsel failed to assign error to the trial court's finding of guilt "in the disjunctive."  Wash. Ct. of Appeal oral arg., *In re Pers. Restraint of Lynn*, No. 88038-1-I (July 17, 2025), at 3 min., 58 sec., *video recording by* TVW*,* Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025071120/.  The trial court had found that "Lynn committed first degree assault *either* with a deadly weapon *or* by any force or means likely to produce great bodily harm," and Lynn contended that "neither [prior] appellate counsel nor Mr. Lynn addressed that second means."  *Id.* (emphasis added).

This matter, too, is barred.  *See State v. Riofta*, 134 Wn. App. 669, 687, 142 P.3d 193 (2006) (PRPs "must raise new points of fact and law that were not *or could not have been* raised" previously) (emphasis added).

[4] At oral argument in the instant matter, Lynn's counsel explained that he was not assigned to Lynn's case until after the timeframe under RCW 10.73.090 to present an IAC claim had passed and that he would have raised IAC as to appellate counsel if he had received the assignment earlier.  Wash. Court of Appeals oral arg., *supra,* at 4 min., 54 sec.

argue the matter more effectively than had been done previously does not satisfy the interests of justice exception to the bar on relitigation.

Lynn's second contention in support of relitigation also fails; he avers that the interests of justice would be served by relitigation because the previous judicial panel was mistaken in inferring his mental state from his actions, but he does not develop how this assertion, even if true, entitles him to another opportunity to litigate the challenge. He does not argue a change in the underlying law or justify his failure to raise this aspect of his sufficiency argument on direct appeal. Again, a petitioner "should raise new points of fact and law that *were not or could not have been raised*" on direct appeal. *Davis,* 152 Wn.2d at 670 (emphasis added) (quoting *In re Pers. Restraint of Gentry,* 137 Wn.2d 378, 388-89, 972 P.2d 1250 (1999)). Lynn's failure to present this particular argument regarding an inference as to his mental state on direct appeal renders this current attempt at additional review fruitless. More critically, the appropriate avenue for relief when a party disagrees with a judicial decision is to seek further review by a higher court. Lynn's argument that the previous panel of this court erred could have been presented in a petition for review to our Supreme Court. It is unclear if such argument was included in the petition for review that followed his direct appeal and was denied by our State Supreme Court in *Lynn* I. Lynn fails to engage with this particular procedural history related to his challenge on this issue, much less demonstrate why he could not have presented this issue in the petition for review from his direct appeal or, if it was included, why this panel should disregard our Supreme Court's rejection of the claim in its denial of his petition.

Lynn's final attempt at invocation of an interests of justice exception is similarly unavailing. He contends that because his own argument in his SAG in the direct appeal was inadequate, he should be allowed to relitigate the issues he previously raised regarding the finding that the propane tanks, as used, qualified as a deadly weapon. At oral argument before this court, Lynn attempted to further justify revisiting this point[5] and averred that the previous panel held that Lynn's SAG argument failed because he did not challenge the findings directly. Defense counsel explained that Lynn could not have done so because the findings "were deficient" to such a degree that Lynn was prevented from meaningfully engaging with them.[6] However, the *Lynn* I panel expressly considered and rejected this argument regarding whether the propane tank was a deadly weapon for purposes of the assault in the first degree statute. Slip op. at 10-11. The panel first noted that Lynn did not challenge any of the trial court's findings related to his use of propane tanks as deadly weapons and concluded that "[g]iven the speeds of this chase, the finding that the propane tanks were deadly weapons in these circumstances is supported by substantial evidence." *Id.* at 11.

While Lynn may believe that the findings were so deficient that he was unable to challenge them, the panel of judges deciding his direct appeal clearly disagreed as their unanimous ruling expressly relied on them. Further, while the written FFCL may not have been extensive or overly detailed, the judge added a notation specifically stating that the "finding[s] of fact recited by the court on 11/4/19 are incorporated by reference herein." When the trial court rendered its verdict, it issued the oral findings

---

[5] *Id.* at 2 min, 52 sec.
[6] *Id.*

- 10 -

of fact referenced in the judge's notation on the written FFCL. As our colleagues who decided *Lynn I* likely observed in their careful review of the record, the trial judge explicitly found the following in the court's oral ruling:

> While the flare gun was not a deadly weapon, the defendant followed the shootings with *the throwing of propane tanks, which turned into projectiles and became deadly weapons in the fashion that they were used.* There is a likelihood that the defendant intended to inflict great bodily harm when he threw the first propane tank, with the results being obvious as the propane tank ruptured and Sergeant LaFrance drove through the cloud of gasses.
> When this was followed by the defendant throwing the second propane tank in the path of Sergeant LaFrance, . . . again, all occurring at the speeds of seventy to eighty miles per hour, the [c]ourt concludes that the State has met its burden of proving beyond a reasonable doubt that the defendant did intend to inflict great bodily harm when he threw the second propane tank at Sergeant LaFrance's patrol car.

(Emphasis added.) Lynn fails to acknowledge these findings that were deliberately incorporated into the written FFCL by reference or offer any argument as to how the quoted portion of the report of proceedings was so deficient that no individual finding could be elucidated, much less challenged, on direct appeal.

Accordingly, the portion of Lynn's petition regarding sufficiency of the evidence is barred by the rule against relitigation of issues. Even inartful presentation of the issue by counsel and Lynn himself in his direct appeal does not entitle him to revisit it in a collateral attack. His attempt to reframe his previous attack on the sufficiency of the evidence on direct appeal as a challenge to the findings of fact, or purported absence thereof, does not present us with new points of fact or law but, rather, is just a variation of an assignment of error we have already considered. Separately, our review of the record and opinion on Lynn's direct appeal establishes that as a re-presentation, this issue is clearly frivolous for that very reason. *See* RAP 16.8.1(b).

Lynn also presents a challenge to the sufficiency of the evidence as to the endangerment enhancement on his conviction for attempting to elude a pursuing police vehicle but fails to offer any argument to explain why that matter could not have been raised in his direct appeal alongside his other sufficiency challenges. *See Becker,* 143 Wn.2d at 496. Accordingly, we decline to reach the merits of that issue, as well as Lynn's renewed challenge to the sufficiency of the evidence underlying the deadly weapon and mental state elements of assault in the first degree.

III.     As-Applied Vagueness Challenge To RCW 9A.36.011(1)(a)

Lynn next contends that the assault in the first degree statute is unconstitutionally vague as applied to him and specifically focuses on the clause "by any force or means" in RCW 9A.36.011(1)(a). He asserts that "the use of that general, undefined language is vulnerable to capricious prosecution" and, because the legislature failed to "delineate parameters or provide an exemplative list," the statute is "impermissibly indefinite" such that his conviction should be vacated and dismissed. Before this court, Lynn explained that "the legislature and its vague statutory language creates a vulnerability to discriminatory enforcement" and, in his case, it was "the prosecution and its charging decision that exploit[ed] that vulnerability."[7]  The State

---

[7] Wash. Court of Appeals oral arg., *supra,* at 18 min., 56 sec. Lynn also averred that the judge's statement that they "would go back and listen," created "an issue of confirmation bias" suggesting that having arrived at a conclusion as to Lynn's guilt, the trial court was returning to the facts in order to find the ones that justified its conclusion.

The unspoken inference in this argument is that the judge's alleged post hoc rationalization was enabled by the vagueness of the statute as exploited by the prosecution. This is not an availing contention; it is the duty of any finder of fact, whether judge or jury, to review the evidence before rendering a verdict in order to resolve anything that remains uncertain. *State v. Head*, 136 Wn.2d 619, 622, 964 P.2d 1187 (1998) (emphasizing duty of trial judge in bench trial "to focus attention on the evidence supporting each element of the charged crime"). This obligation necessarily requires consideration of the evidence that has been presented during trial. To *not* reexamine the relevant evidence would be a dereliction of that duty.

- 12 -

responds that Lynn has not met his burden to prove "constitutional error beyond a reasonable doubt nor shown actual and substantial prejudice" and, as a result, we must deny his petition.

We review the constitutionality of a statute de novo. *State v. Abrams,* 163 Wn.2d 277, 282, 178 P.3d 1021 (2008). If the statute does not implicate rights protected by the First Amendment to the United States Constitution, the vagueness challenge considers the statute as applied to the specific facts of the case. *State v. Watson,* 160 Wn.2d 1, 6, 154 P.3d 909 (2007). The due process clause of the Fourteenth Amendment to the United States Constitution requires our statutes to provide ascertainable standards of guilt in order to prevent arbitrary enforcement. *Id.* We approach this issue "with a strong presumption in favor of the statute's validity." *State v. Harrington*, 181 Wn. App. 805, 824, 333 P.3d 410 (2014). In particular, we evaluate the context of the entire statute and afford it "a sensible, meaningful and practical interpretation." *Id.* "A statute is not void for vagueness merely because some terms are not defined." *Id.* A degree of subjectivity does not mandate a conclusion of vagueness, as that occurs "only if it invites an inordinate amount of police discretion." *City of Spokane v. Douglass,* 115 Wn.2d 171, 181, 795 P.2d 693 (1990). A successful petitioner must prove beyond a reasonable doubt that the statute is unconstitutionally vague. *Watson,* 160 Wn.2d at 11.

Lynn cannot prevail on his as-applied vagueness claim because, read as a whole, RCW 9A.36.011 adequately identifies the prohibited conduct, preventing arbitrary enforcement. The statute reads as follows:

> (1) A person is guilty of assault in the first degree if [they], with intent to inflict great bodily harm:

(a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or
(b) Transmits HIV[8] to a child or vulnerable adult; or
(c) Administers, exposes, or transmits to or causes to be taken by another, poison or any other destructive or noxious substance; or
(d) Assaults another and inflicts great bodily harm.
(2) Assault in the first degree is a class A felony.

RCW 9A.36.011. Lynn is correct that the statute does not provide a definition of "force or means," but it does not have to. We read the challenged statute as a whole; the other parts of the statute describe the conduct that can be charged as assault in the first degree, providing ascertainable standards of the conduct it prohibits.

To convict an accused person under this statute, the State must prove that the defendant "intend[ed] to inflict great bodily harm," which draws a distinction of severity that separates the harm prohibited by this statute from lesser forms of injury. RCW 9A.36.011(1). Unfortunately, the methods by which humans physically mistreat each other are infinitely varied, so the statute necessarily focuses on the real or potential outcomes of those harmful actions instead of specifying prohibited actions. Even if the statute did provide examples of qualifying "force or means," it would necessarily be a nonexclusive list; people will undoubtedly devise methods of injury beyond those enumerated. The facts of Lynn's offense in count 1 highlight the prescience of our elected lawmakers in drafting the statute, as it is unlikely the legislature could have specifically predicted the improvised means by which Lynn attempted to thwart pursuing officers, which created the risk of great bodily harm to the pursuing officers.

RCW 9A.36.011(1)(a) provides a disjunctive list of the means by which one may complete an assault in the first degree: "with a firearm *or* any deadly weapon *or*

---

[8] Human immunodeficiency virus.

- 14 -

by any force or means likely to produce great bodily harm or death." (Emphasis added.) As noted in the court's oral findings set out in Part II *supra*, the trial judge found that Lynn committed assault in the first degree by his use of the propane tanks as deadly weapons with the intent to cause great bodily harm to LaFrance. The trial court also found that Lynn

> fired two rounds from the flare gun at Sergeant LaFrance and threw out two metal twelve- to fourteen-inch propane tanks in the path of Sergeant LaFrance, who was traveling only fifty feet behind him at the rate of seventy to eighty miles per hour.
> When the propane tanks hit the road, they ruptured and were propelled by the pressurized contents, testified to almost like rockets, spraying out their contents into the path of patrol cars, with some of the contents covering the windshield of Sergeant LaFrance's patrol car. No evidence was presented that the flare gun was a firearm, and the State did not meet its burden to prove that the flare gun was a deadly weapon when used in the manner presented. However, the [c]ourt concludes beyond a reasonable doubt that the propane tanks thrown in the path of Sergeant LaFrance's patrol car, considering all the circumstances presented, were used by a force and means that was likely to produce great bodily harm or death to Sergeant LaFrance.

The written FFCL reflect the court's finding that two of the alternate means for assault in the first degree were proved by the State, noting the "assault was committed with a deadly weapon under the circumstances for which it was used and that the assault was committed by force or means likely to produce great bodily harm." The record clearly establishes that the State had, in fact, at different points in the pretrial phase of the case attempted to proceed on the theory that the flare gun at issue either was a firearm for purposes of the first alternate means under RCW 9A.36.011(1)(a) or that it was also a deadly weapon in the manner by which Lynn used it. The State expressly argued in its opening statement that its "theory in this case and belief in this case [is] that the defendant was shooting the flare gun and attempting to ignite the propane

that was spewed onto Sergeant LaFrance's vehicle." A failed attempt by the government to fit the facts of a case into multiple alternate means available within a criminal statute does not render the statute vague as-applied, particularly where a clear theory of the case was presented and the court understood the distinctions between those alternate means. Lynn has not carried his burden on this constitutional challenge to establish entitlement to relief on this issue.

IV.     Constitutional Sufficiency of Charging Document

Finally, Lynn avers that the amended information was constitutionally insufficient as it contained only the statutory elements, the date of the incident and the name of the alleged victim, and lacked a "clear and distinct description of the culpable act" because it left out the "force or means" used in the assault in the first degree allegation. Because Lynn did not seek a bill of particulars in the trial court to remedy any purported vagary or confusion, he has waived this challenge, and we decline to consider it.

An accused person has a constitutional right to know the charges against them. U.S. CONST. amend. VI; WASH. CONST. art. I § 22. This ensures that the accused can present a defense, and the "'right is satisfied when defendants are apprised with reasonable certainty of the accusations against them.'" *State v. Gehrke,* 193 Wn.2d 1, 7, 434 P.3d 522 (2019) (quoting *State v. Leach,* 113 Wn.2d 679, 695, 782 P.2d 552 (1989)). We review the constitutional sufficiency of a charging instrument de novo. *State v. Zillyette,* 178 Wn.2d 153, 158, 307 P.3d 712 (2013). "The information is constitutionally adequate only if it sets forth all the essential elements of the crime." *State v. Hugdahl,* 195 Wn.2d 319, 324, 458 P.3d 760 (2020).

An element is essential if it must be specified to establish the illegality of the charged behavior. *State v. Briggs,* 18 Wn. App. 2d 544, 549, 492 P.3d 218 (2021). "More than merely listing the elements, the information must allege the particular facts supporting them. *State v. Nonog,* 169 Wn.2d 220, 226, 237 P.3d 250 (2010). If an information provides all the statutory elements but is missing details that are significant to the defense, the defense can request a bill of particulars to remedy the deficiency. *State v. Holt,* 104 Wn.2d 315, 320, 704 P.2d 1189 (1985). Our Supreme Court has clearly established that a "defendant is not entitled to challenge the information on appeal if [they] failed to request a bill of particulars at an earlier time." *Id.*

Accordingly, Lynn's challenge to the sufficiency of the amended information fails. Lynn does not acknowledge or engage in this threshold analysis. The record before us strongly suggests that he did not seek a bill of particulars,[9] and he offers no explanation for that strategic decision given that was an option available to him "before arraignment or within 10 days after arraignment or at such later time as the court may permit." CrR 2.1(c). Further, the amended information contains all of the statutory elements that constitute the crime of assault in the first degree, as well as some minimal factual allegations. As the petitioner, Lynn has the burden to prove prejudice resulting from a constitutional error in order to receive the relief sought. Because he did not engage in the threshold analysis regarding the bill of particulars, the matter is waived, and we do not proceed in our analysis of any potential prejudice.

---

[9] The record of events in the trial court accompanying Lynn's PRP includes: the J&S, the initial and first amended information, the FFCL, and the report of proceedings from arraignment, seven motion hearings, two pretrial hearings, the bench trial, verdict, and sentencing.

As the petitioner, Lynn has a duty to identify the documents needed for review of his petition. RAP 16.7(a)(3). The record provided does not contain a bill of particulars or any reference to one having been sought.

We will not consider matters that were previously decided in Lynn's direct appeal, or that could have been brought at that stage of his postconviction litigation, and we decline his invitation to revisit those challenges. Crucially, as to the matters not already decided on direct appeal, Lynn has failed to establish that the assault in the first degree statute was vague beyond a reasonable doubt as applied to him and waived any challenge to the sufficiency of the charging instrument. Accordingly, his petition is denied.

WE CONCUR: